No. CIV-07-1290-D

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

---

**JULIUS JONES,**

**Petitioner,**

**-vs-**

**MARTY SIRMONS, Warden,**

**Respondent.**

---

## RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

---

**W.A. DREW EDMONDSON**
**ATTORNEY GENERAL OF OKLAHOMA**

**JENNIFER L. STRICKLAND, OBA #20546**
**ASSISTANT ATTORNEY GENERAL**

**313 NE 21ˢᵗ Street**
**Oklahoma City, OK  73105**
**(405) 521-3921; (405) 522-4534 (FAX)**
**fhc.docket@oag.state.ok.us**

**ATTORNEYS FOR RESPONDENT**

**DECEMBER 18, 2008**

## <u>TABLE OF CONTENTS</u>

**Page**

**STANDARD OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**RESPONSE TO PETITIONER'S STATEMENT OF THE FACTS**. . . . . . . . . . . . . **6**

**<u>GROUND ONE</u>**

        **THREE OF PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE UNEXHAUSTED AND SHOULD BE TREATED AS PROCEDURALLY BARRED. THE OCCA'S DETERMINATION THAT PETITIONER'S REMAINING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS WITHOUT MERIT IS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**<u>GROUND TWO</u>**

        **THE OCCA'S DETERMINATION THAT PETITIONER'S TRIAL ATTORNEY WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A <u>FRANKS V. DELAWARE</u> HEARING WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW**. . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**<u>GROUND THREE</u>**

        **THE OCCA'S REJECTION OF PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIMS IS NEITHER CONTRARY TO NOR DOES IT INVOLVE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

i

**GROUND FOUR**

> **THE OCCA'S FINDING THAT THE TRIAL COURT PROPERLY EXCUSED JUROR MCPEAK FOR CAUSE WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41**

**GROUND FIVE**

> **THE OCCA'S HOLDING THAT PETITIONER WAS PRESENT FOR ALL CRITICAL STAGES OF HIS TRIAL WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45**

**GROUND SIX**

> **THE OCCA'S DETERMINATION THAT PETITIONER WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS NEITHER CONTRARY TO NOR DID IT INVOLVE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50**

**GROUND SEVEN**

> **THE OCCA'S REFUSAL TO REVERSE PETITIONER'S SENTENCE BECAUSE THE TRIAL COURT REFUSED TO INSTRUCT THE JURY ON THE MEANING OF LIFE WITHOUT PAROLE WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF FEDERAL LAW. . . . . . . . . 58**

**GROUND EIGHT**

> **THE OCCA'S AFFIRMANCE OF OKLAHOMA'S CONTINUING THREAT AGGRAVATOR WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60**

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

**CERTIFICATE OF SERVICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **62**

# TABLE OF AUTHORITIES

## FEDERAL CASES CITED

**Ayers v. Belmontes,**
   549 U.S. 7, 127 S. Ct. 469, 166 L. Ed. 2d 334 (2006). . . . . . . . . . . . . . . . . . 36, 37

**Bland v. Sirmons,**
   459 F.3d 999 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**Boyde v. California,**
   494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990). . . . . . . . . . . . . . . 35, 36

**Brown v. Payton,**
   544 U.S. 133, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005). . . . . . . . . . . . . . . 37, 39

**Brown v. Sirmons,**
   515 F.3d 1072 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**Bryson v. Ward,**
   187 F.3d 1193 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Caldwell v. Mississippi,**
   472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985). . . . . . . . . . . . . . . . . 35

**Carey v. Musladin,**
   549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). . . . . . . . . . . . . . . . . . 3, 43

**Coleman v. Thompson,**
   501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). . . . . . . . . . . . . . . . . 6

**Darden v. Wainwright,**
   477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). . . . . . . . . . . . . 27, 28, 30

**DeLozier v. Sirmons,**
   531 F.3d 1306 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Demarest v. Price,**
   130 F.3d 922 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Donnelly v. DeChristoforo,
    416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). . . . . . . . . . . . . . . . . . . . 27

Early v. Packer,
    537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). . . . . . . . . . . . . . . . . . . . . 4

Ellis v. Harget,
    302 F.3d 1182 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Franks v. Delaware,
    438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). . . . . . . . . . . . . . . . 23, 24

Gonzales v. Thomas,
    99 F.3d 978 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Greer v. Miller,
    483 U.S. 756, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987). . . . . . . . . . . . . . . . . 27

Haines v. Kerner,
    404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). . . . . . . . . . . . . . . . . . . 10

House v. Hatch,
    527 F.3d 1010 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hoxsie v. Kerby,
    108 F.3d 1239 (10th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 24, 51

James v. Gibson,
    211 F.3d 543 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

Johnson v. Champion,
    288 F.3d 1215 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Jones v. Barnes,
    463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). . . . . . . . . . . . . . . 15, 52

Kane v. Garcia Espitia,
    546 U.S. 9, 126 S. Ct. 407, 163 L. Ed. 2d 10 (2005). . . . . . . . . . . . . . . . . . . . . 3

v

**Kentucky v. Stincer,**
     482 U.S. 730, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). . . . . . . . . . . . . . . . . .  46

**Larson v. Tansy,**
     911 F.2d 392 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

**Le v. Mullin,**
     311 F.3d 1002 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 19, 24, 51

**Lockett v. Ohio,**
     438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). . . . . . . . . . . . . . . . . . . .  35

**McDonough Power Equipment, Inc. v. Greenwood,**
     464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984). . . . . . . . . . . . . . . . . . . .  54

**Medlock v. Ward,**
     200 F.3d 1314 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

**Miller v. Mullin,**
     354 F.3d 1288 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 51, 58

**Mitchell v. Esparza,**
     540 U.S. 12, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003). . . . . . . . . . . . . . . . . . . . . . .  4

**Mollett v. Mullin,**
     348 F.3d 902 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  59

**Moore v. Gibson,**
     195 F.3d 1152 (10th Cir.  1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

**Neill v. Gibson,**
     278 F.3d 1044 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61

**Parkhurst v. Shillinger,**
     128 F.3d 1366 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

**Richie v. Mullin,**
     417 F.3d 1117 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

__Romano v. Oklahoma,__
    __512 U.S. 1, 114 S. Ct. 2004, 129 L. Ed. 2d 1 (1994)__ . . . . . . . . . . . . . . . . . . . . . . __35__

__Simmons v. South Carolina,__
    __512 U.S. 154, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994)__ . . . . . . . . . . . . . . . . __59__

__Smallwood v. Gibson,__
    __191 F.3d 1257 (10th Cir. 1999)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __12__

__Smith v. Mullin,__
    __379 F.3d 919 (10th Cir. 2004)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __59__

__Smith v. Robbins,__
    __528 U.S. 259, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)__ . . . . . . . . . . . . . . . __13, 50__

__Snyder v. Massachusetts,__
    __291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934)__ . . . . . . . . . . . . . . . . . . . . . . . . __46__

__Steele v. Young,__
    __11 F.3d 1518 (10th Cir. 1993)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __12__

__Strickland v. Washington,__
    __466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)__ . . . . . . . . . . . . . . _passim_

__Thomas v. Gibson,__
    __218 F.3d 1213 (10th Cir. 2000)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __12__

__Thornburg v. Mullin,__
    __422 F.3d  1113 (10th Cir. 2005)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __27__

__Tison v. Arizona,__
    __481 U.S. 137, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987)__ . . . . . . . . . . . . . . . . . __22__

__United States v. Almaraz,__
    __306 F.3d  1031 (10th Cir. 2002)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __30__

__United States v. Barrett,__
    __496 F.3d 1079 (10th Cir. 2007)__ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __58__

**United States v. Bertoli,**
     F.3d 1384 (3d Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

**United States v. Bowie,**
     892 F.2d 1494 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

**United States v. Gagnon,**
     470 U.S. 522, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). . . . . . . . . . . . . . . . . .  46

**United States v. Gomez,**
     67 F.3d 1515 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48, 49

**United States v. Kelly,**
     535 F.3d 1229 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

**United States v. McConnel,**
     464 F.3d 1152 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54

**United States v. Rodriguez,**
     67 F.3d 1312 (7th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

**United States v. Santiago,**
     977 F.2d 517 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

**United States v. Zabriskie,**
     415 F.3d 1139 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

**Uttecht v. Brown,**
     127 S. Ct. 2218, 167 L. Ed. 2d 1014 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . .  43

**Valdez v. Gunter,**
     988 F.2d 91 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46, 47

**Wainwright v. Witt,**
     469 U.S. 412, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985). . . . . . . . . . . . . . . . . . .  43

**Williams v. Taylor,**
     529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). . . . . . . . . . . . . . .  3, 4, 5

**Willingham v. Mullin,**
　　296 F.3d 917 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**Wilson v. Sirmons,**
　　536 F.3d 1064 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49, 61

## STATE CASES CITED

**Andrews v. State,**
　　166 P.3d 495 (Okla. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

**Banks v. State,**
　　2002 OK CR 9, 43 P.3d 390. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

**Battenfield v. State,**
　　953 P.2d 1123 (Okla. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . .  15, 52

**Bland v. State,**
　　2000 OK CR 11  4 P.3d 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

**Coburn v. State,**
　　461 N.E.2d 1154 (Ind. App. 2 Dist. 1984). . . . . . . . . . . . . . . . . . . . . . . . . .  40

**Fox v. State,**
　　779 P.2d 562 (Okla. Crim. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

**Garrison v. State,**
　　103 P.3d 590 (Okla. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . .  14, 52

**Gibbins v. State,**
　　495 S.E.2d 46 (Ga. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

**Gilbert v. State,**
　　1997 OK CR 71, 951 P.2d 98. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

**Harris v. State,**
　　84 P.3d 731 (Okla. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  57

**Hill v. State,**
　　977 S.W.2d 234 (Ark. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

**Jones v. State,**
      128 P.3d 521 (Okla. Crim. App. 2006)............................... *passim*

**Jones v. State,**
      132 P.3d 1 (Okla. Crim. App. 2006)..................................... 2

**Lay v. State,**
      179 P.3d 615 (Okla. Crim. App. 2008)................................ 57

**Lott v. State,**
      98 P.3d 318 (Okla. Crim. App. 2004)............................... 14, 52

**Matthews v. State,**
      2002 OK CR 16, 45 P.3d 907........................................ 28

**McCracken v. State,**
      887 P.2d 323. ...................................................... 58

**Rascon v. LeMaster,**
      No. 02-2028, 42 Fed.Appx. 249, 2002 WL. 1365610. ..................... 47

**Tafoya v. Tansy,**
      No. 00-2049, 9 Fed.Appx. 862, 2001 WL. 557971 (10th Cir. May 24, 2001). . 47

**Richthofen v. Cain,**
      No. 05-5701, 2008 WL. 630477 (E.D.La. March 7, 2008)................. 40

**Rojem v. State,**
      130 P.3d 287 (Okla. Crim. App. 2006)................................ 57

**Romano v. State,**
      1995 OK CR 74, 909 P.2d 92........................................ 29

**Slaughter v. State,**
      1997 OK CR 78, 950 P.2d at 869..................................... 28

**Spears v. State,**
      1995 OK CR 36, 900 P.2d 431....................................... 29

**Torres v. State,**
    **58 P.3d 214 (Okla. Crim. App. 2002)**................................... **57**

**Turrentine v. State,**
    **1998 OK CR 33, 965 P.2d 955.**....................................... **28**

## <u>FEDERAL STATUTES CITED</u>

**28 U.S.C. § 2254.**.................................................... **3, 5**

## <u>STATE STATUTES CITED</u>

**21 O.S.Supp. 1998, § 701.7.**.......................................... **1, 2**

**22 O.S. § 1086** ................................................ **12, 25, 56**

**47 O.S.§ 11-902.**..................................................... **56**

**38 O.S. 2001, § 28.**................................................... **56**

## <u>FEDERAL RULES CITED</u>

**Fed. R. App. P. 28.** ............................................... *passim*

**Fed. R. Civ. P. 25.** ..................................................... **1**

## <u>STATE RULES CITED</u>

**Rule 9.3(A), <u>Rules of the Oklahoma Court of Criminal Appeals</u>,**
    **Title 22, Ch. 18, App.**.......................................... **14, 51**

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JULIUS JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **-vs-** | ) | **Case No. CIV-07-1290-D** |
| | ) | |
| **RANDY WORKMAN[1], Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**</u>

The Attorney General of the State of Oklahoma, W.A. Drew Edmondson, appearing

on behalf of the above-named Respondent in response to the petition for writ of habeas

corpus filed herein, shows the Court as follows:

1. Petitioner, Julius Jones, an Oklahoma death row inmate who is in the custody of

Randy Workman, Warden of the Oklahoma State Penitentiary, McAlester, Oklahoma,

appearing through counsel, has filed with this Court a petition seeking federal habeas relief

from his convictions and sentences.  <u>See</u> Doc. 22.

2. The instant petition challenges a judgment and sentence entered on April 19, 2002,

in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-1999-4373,

wherein Petitioner was found guilty by a jury of one count of first degree felony murder in

violation of 21 O.S.Supp. 1998, § 701.7, one count of felonious possession of a firearm in

---

[1]At the time of the filing of the petition, Marty Sirmons was the warden of the
Oklahoma State Penitentiary.  However, Randy Workman has since assumed that office.
According to Fed. R. Civ. P. 25(d)(1), Mr. Workman is automatically substituted as a party.

violation of 21 O.S.Supp. 1997, § 1283, and one count of conspiracy to commit a felony in violation of 21 O.S.Supp. 1999, § 421.  Petitioner's jury trial was presided over by the Honorable Jerry D. Bass, District Judge.  The jury also found the aggravating circumstances of (1) a great risk of death to more than one person and (2) Petitioner poses a continuing threat to society.  In accordance with the jury's recommendations, Judge Bass sentenced Petitioner to death for the murder count, fifteen years imprisonment on the felonious possession of a firearm count, and twenty-five years imprisonment on the conspiracy count.

3.  Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA) which affirmed the convictions and sentences in an opinion published as Jones v. State, 128 P.3d 521 (Okla. Crim. App. 2006) (cert. denied, 127 S.Ct. 404 (2006)).  The OCCA granted Petitioner's petition for rehearing but denied recall of the mandate.  Jones v. State, 132 P.3d 1 (Okla. Crim. App. 2006).  Petitioner's application for post-conviction relief was denied by the OCCA in an unpublished opinion. Jones v. State, No. PCD-2002-630 (Okla. Crim. App. Nov. 5, 2007).

4.  Some of Petitioner's claims of ineffective assistance of counsel are unexhausted. It would be futile to require Petitioner to exhaust such claims, however, because they would now be considered procedurally barred by the Oklahoma state courts.  See James v. Gibson, 211 F.3d 543, 550 (10th Cir. 2000).

5. Counsel for Respondent has requested the OCCA to send to the clerk of this Court all briefs, transcripts, exhibits and original records from Petitioner's direct appeal and post-

conviction proceedings. Respondent anticipates that all such records will be delivered to this Court on or before the due date of this response.

6. Petitioner's petition was filed on November 3, 2008. Doc. 22. Per this Court's orders of September 10, 2008 and October 30, 2008, the instant response is due to be filed by December 18, 2008. Docs. 18, 21. Therefore, this response is timely filed.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d), a petition for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has emphasized that "clearly established Federal law" as used in the AEDPA "refers to the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)). In Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005), the Supreme Court also made clear that broad generalizations in its opinions do not justify the circuit and district courts in finding points of law not specified in such

3

opinions to be "clearly established" for AEDPA purposes.  Thus, the Tenth Circuit has held

that Supreme Court holdings "must be construed narrowly and consist only of something akin

to on-point holdings."  House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008).

Under the AEDPA, Petitioner must show that the state court's decision was either

contrary to law clearly established by the Supreme Court or involved an unreasonable

application of such law to the facts of the case in order to be eligible for federal habeas relief.

The Supreme Court has held that a state court's decision is not "contrary to" a clearly

established precedent unless it "applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or, if the state court confronts facts that are materially

indistinguishable from a Supreme Court decision, it arrives at a result contrary to the federal

precedent.  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002)

(quoting Williams, 529 U.S. at 405-06).  The state court does not have to cite, or even be

aware of, controlling Supreme Court precedents, so long as the state court's reasoning and

result do not contradict those precedents.  Mitchell v. Esparza, 540 U.S. 12, 16, 124 S.Ct. 7,

10, 157 L.Ed.2d 263 (2003).

Additionally, as further explained in Williams:

> Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

Id., 529 U.S. at 412-13.   Further, the Supreme Court has concluded that under the "unreasonable application" clause, a federal habeas court must ask whether the state court's application of Supreme Court law was objectively unreasonable.  Therefore, under the clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

Furthermore, state court determinations of fact "shall be presumed correct" unless the presumption is rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The Tenth Circuit Court of Appeals has acknowledged this standard.  See Willingham v. Mullin, 296 F.3d 917, 922 (10th Cir. 2002) (holding "AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence").

Finally, under the AEDPA, petitions for writs of habeas corpus are not to be granted by the federal courts on claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1).  However, exhaustion of a particular ground in the state court is not required if the attempt to exhaust would be futile.  James, 211 F.3d at 550.  Rather, if a state prisoner's federal claims are, or would be, defaulted in the state court "pursuant to an independent and adequate state procedural rule," such grounds are procedurally barred from

5

consideration by the federal habeas courts unless the petitioner can show cause and prejudice

to excuse the default or if he demonstrates that a fundamental miscarriage of justice will

result if the claim is not considered.   Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S.Ct.

2546, 2564-2565, 115 L.Ed.2d 640 (1991); Johnson v. Champion, 288 F.3d 1215, 1223 (10th

Cir. 2002); James, 211 F.3d at 550.   When a petitioner could have raised his claims in

previous appeals, but did not do so, such claims are generally considered waived or defaulted

under Oklahoma law.   Ellis v. Harget, 302 F.3d 1182, 1186 (10th Cir. 2002) (cert. denied,

537 U.S. 1236, 123 S.Ct. 1361, 155 L.Ed.2d 203 (2003)) (citing Walker v. State, 933 P.2d

327, 330-31 (Okla. Crim. App. 1997)[2] and 22 O.S. 2001, § 1086).   Such failure has been

consistently held to constitute an "independent and adequate ground for denying habeas

relief."   Ellis, 302 F.3d at 1186.

## **RESPONSE TO PETITIONER'S STATEMENT OF THE FACTS**

Respondent disagrees with many of the suggestions and inferences made by Petitioner

in the factual summary section of his petition.   Respondent will address those points of

disagreement in responding to Petitioner's grounds for relief.   Because this Court must

presume that factual determinations made by the state court are correct, Respondent herein

reproduces the factual summary as presented by the OCCA in its direct appeal opinion:

> On Wednesday, July 28, 1999, Paul Howell was fatally shot in
> the driveway of his parents' Edmond home. Howell, his sister,

---

[2]Superceded on other grounds by statute as recognized in Davis v. State, 123 P.3d 243,
245 (Okla. Crim. App. 2005).

Megan Tobey, and Howell's two young daughters had just
returned from a shopping trip in Howell's Chevrolet Suburban.
Howell pulled into the driveway and turned the engine off. As
Tobey exited from the front passenger side, she heard a gunshot.
Tobey turned to see her brother slumped over the driver's seat,
and a young black male, wearing a white T-shirt, a stocking cap
on his head, and bandana over his face, demanding the keys to
the vehicle. Tobey rushed to get herself and Howell's daughters
out of the Suburban. As Tobey escorted the girls through the
carport, she heard someone yelling at her to stop, and then
another gunshot. Tobey got the girls inside and summoned for
help. Howell's parents ran outside to find their son lying on the
driveway. His vehicle was gone. Howell died a few hours later
from a single gunshot wound to the head.

Two days after the shooting, Oklahoma City police found
Howell's Suburban parked near a convenience store on the south
side of town. Detectives canvassed the neighborhood and spoke
with Kermit Lottie, who owned a local garage. Lottie told
detectives that Ladell King, and another man he did not know,
had tried to sell the vehicle to him the day before. Lottie realized
at the time that the vehicle matched the description given in
news reports about the Howell carjacking. Ladell King, in turn,
told police that he had agreed to help Christopher Jordan and
Jones find a buyer for a stolen vehicle. On the night of the
shooting, Jordan came to King's apartment driving a Cutlass;
Jones arrived a short time later, wearing a white T-shirt, a black
stocking cap, and a red bandana, and driving the Suburban. King
told police that Jones could be found at his parents' Oklahoma
City home.

Police then drove to Jones's parents' home, called a telephone
number supplied by King, and spoke to someone who identified
himself as Julius Jones. Jones initially agreed to come out and
speak to police, but changed his mind. Police made several
attempts to re-establish telephone contact; eventually a female
answered and claimed Jones was not there. While some officers
maintained surveillance at the home, others sought and obtained

7

warrants to arrest Jones and search his parents' home for evidence. Police found a .25-caliber handgun, wrapped in a red bandana, secreted in the attic through a hole in a bedroom ceiling and found papers addressed to Jones in the bedroom. Police also found a loaded, .25-caliber magazine, hidden inside a wall-mounted door-chime housing. Further investigation revealed that the bullet removed from Howell's head, and a bullet shot into the dashboard of the Suburban, were fired from the handgun found in the attic of the Jones home.

Christopher Jordan was arrested on the evening of July 30. Jones, who managed to escape his parents' home before police had secured it, was arrested at a friend's apartment on the morning of July 31. The two men were charged conjointly with conspiracy to commit a felony, and with the murder of Howell. Jordan agreed to testify against Jones as part of a plea agreement. At trial, Jordan testified that the two men had planned to steal a Chevrolet Suburban and sell it; that they followed Howell's vehicle for some time with the intent to rob Howell of it; that once Howell pulled into the driveway, Jordan stayed in their vehicle while Jones, armed with a handgun, approached the Suburban on foot; that after the robbery-shooting, Jones drove the Suburban away and told Jordan to follow him; and that Jones subsequently claimed his gun had discharged accidentally during the robbery.

Jones, 128 P.3d at 532-533.

## ARGUMENT AND AUTHORITY

### GROUND ONE

**THREE OF PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE UNEXHAUSTED AND SHOULD BE TREATED AS PROCEDURALLY BARRED. THE OCCA'S DETERMINATION THAT PETITIONER'S REMAINING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS WITHOUT MERIT IS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

Petitioner's first ground for relief involves four separate claims of ineffective assistance of trial counsel. Three of Petitioner's claims have not been presented to the OCCA and are, therefore, unexhausted. As those claims would be barred by the OCCA if Petitioner now attempted to raise them, this Court should not consider their merits. Petitioner's other ineffective assistance claim was denied by the OCCA on direct appeal and post-conviction. Because the OCCA's decision is squarely aligned with the applicable Supreme Court precedents, Petitioner's first ground for relief must be denied.

Petitioner asserts that his trial attorney was ineffective for: (1) failing to establish that Petitioner's hair was too short for him to have been the person who shot Mr. Howell; (2) failing to argue that Mr. King fit the description given by witness Eckie Prater of the individual who was with Mr. Jordan when he was apparently looking for a Suburban to steal earlier in the day on July 28, 1999; (3) failing to adequately investigate and use the testimony of Oklahoma County jail inmates, Manuel Littlejohn and Christopher Berry, who claim that

9

Mr. Jordan confessed to them and exonerated Petitioner; and (4) failing to adequately impeach Mr. Jordan's trial testimony.  Doc. 22 at 9-24.  With respect to the fourth claim, Petitioner specifically points to counsel's failure to make an exhibit of Mr. Jordan's interview with Edmond police.  Doc. 22 at 17-22.

On direct appeal, Petitioner claimed that his trial attorney was ineffective for, *inter alia*, failing to present the testimony of Mr. Littlejohn and failing to fully impeach Mr. Jordan.  DA Brief, pages 41-46.  Specifically, Petitioner stated that counsel should have asked Mr. Jordan about prior testimony from the preliminary hearing regarding Mr. Jordan's position during the shooting and indicating that Mr. Jordan was at Petitioner's parents' house on the morning of July 30, 1999.  DA Brief, page 45.  Petitioner further claimed that trial counsel should have cross-examined Mr. Jordan with his plea agreement, his prior inconsistent statements to Mr. Littlejohn and his plea negotiation proffer, a copy of which is attached to the instant petition.[3]  DA Brief, page 45.  On post-conviction, Petitioner

---

[3]Petitioner notes on page 18 of his petition that he attached a copy of the plea proffer to his petition, but he does not argue that counsel was ineffective for failing to use the proffer.  Nor does Petitioner set forth the parts of the proffer, if any, that were inconsistent with Mr. Jordan's trial testimony.  Rather, Petitioner's entire argument is focused on counsel's failure to use Mr. Jordan's interview with Edmond police.  Doc. 22 at 17-22. Petitioner is represented by counsel and is, therefore, not entitled to have his Petition liberally construed so as to include an argument that trial counsel was ineffective for failing to use the plea proffer.  See Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972) (stating that *pro se* pleadings are held to a less stringent standard than those drafted by lawyers).  In addition, Petitioner has waived any claim that counsel was ineffective for failing to use the plea proffer because, as noted above, he has failed to explain how the plea proffer was inconsistent with Mr. Jordan's testimony.  Cf. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons

claimed that trial counsel was ineffective for, *inter alia*, failing to investigate the information

provided by Mr. Littlejohn and thus locate Mr. Berry.  PC App., pages 27-28.

Although Petitioner did raise a claim of ineffective assistance of trial counsel for

failing to adequately impeach Mr. Jordan on direct appeal, that claim did not rely on Mr.

Jordan's police interview, as does his current claim.   Accordingly, that claim is not

exhausted.  See Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997) (holding that evidence

that places a claim in a significantly different posture must be presented to the state courts

before the petitioner can seek habeas relief).  Thus, Petitioner has exhausted his third claim,

---

for them, with citations to the authorities and parts of the record on which the appellant relies"); see also Johnson v. Mullin, No. CIV-04-1602-L, 2006 WL 1804558 (W.D.Okla. June 28, 2006) (unpublished op.) (holding that a petitioner who is represented by counsel, should provide the Court with arguments based on Supreme Court authority to support his claims).

In the absence of any specifics, it is difficult to respond to the merits of this argument. However, the Tenth Circuit has repeatedly stated that "counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy." DeLozier v. Sirmons, 531 F.3d 1306, 1326 (10th Cir. 2008) (quoting Richie v. Mullin, 417 F.3d 1117, 1124 (10th Cir. 2005). In this case, the OCCA found that "Counsel did cross-examine Jordan at length, pointing out inconsistencies in his story and otherwise attacking his credibility. Jones's arguments on appeal are nothing more than complaints about exactly how that impeachment should have been accomplished. Jordan admitted in guilt-stage cross-examination that many of the details he had previously given to police and his own attorney were false; Jones's defense counsel methodically went over many of these untruths. Jordan also admitted, on cross-examination, that he had previously lied about his involvement in this case to help himself out. In the punishment stage, trial counsel cross-examined Jordan again about his plea negotiations, and how he stood to gain from helping the State convict Jones. The fact that counsel did not ask every question Jones is now able to formulate on appeal is not proof of deficient performance." Jones, 128 P.3d at 546-547.  Petitioner has failed to rebut the OCCA's factual findings by clear and convincing evidence or to establish that the OCCA's conclusion was contrary to or an unreasonable application of clearly established federal law.

11

and no other.  Ordinarily, a petition containing unexhausted claims must be dismissed.  <u>See</u> <u>Parkhurst v. Shillinger</u>, 128 F.3d 1366, 1368 (10th Cir. 1997).  However, this Circuit has held that dismissal without prejudice is not appropriate if the state court would find the unexhausted claim to be barred on independent and adequate state procedural grounds. <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1267 (10th Cir. 1999).

If Petitioner now attempted to return to state court and raise his other ineffective assistance of trial counsel claims, those claims would be barred.  <u>See</u> 22 O.S. § 1086 (all grounds not previously raised may not be the basis for a subsequent application for post-conviction relief).  This Circuit has found Oklahoma's bar of claims, including ineffective assistance of counsel, not raised in an initial application for post-conviction relief to be independent and adequate.  <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1221-1222 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1323 (10th Cir. 2000); <u>Smallwood</u>, at 1267-69.  Petitioner has not argued that he is entitled to have the procedural bar overlooked on the basis of cause and prejudice or a fundamental miscarriage of justice.  Accordingly, this Court should not consider Petitioner's claims.  <u>See</u> <u>Steele v. Young</u>, 11 F.3d 1518, 1524 (10th Cir. 1993) (when it is obvious that the state court would find the unexhausted claim to be procedurally barred, the federal court will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review).

With respect to Petitioner's claim that trial counsel should have presented the testimony of Mr. Littlejohn and Mr. Berry, this Court should deny relief on the merits.  First,

however, it should be noted that Petitioner raises a very similar claim in ground six, wherein he contends that trial and appellate counsel failed to discover that Mr. Littlejohn's statements could be corroborated by Mr. Berry. Doc. 22 at 33. Due to the similarity between the two claims, they will both be addressed in this proposition.

The test for claims of ineffective assistance of appellate counsel is the same as that used in evaluating claims that trial counsel was ineffective. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). Therefore, Petitioner must show that trial and appellate counsels' performances were unreasonable and that he suffered prejudice, that is, that there is a reasonable probability that, had the errors complained of not been made, the result of his trial and/or appeal would have been different. Smith, at 285, 120 S.Ct. at 764; see also, Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068-2069, 80 L.Ed.2d 674 (1984). To prove that counsel's performance was deficient Petitioner must overcome the strong presumption that counsel's conduct was reasonable and that counsel's actions might be considered sound trial strategy. Id. A reviewing court must make every effort to "eliminate the distorting effects of hindsight" and evaluate counsel's performance in light of his perspective at the time of trial. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance must be shown to be "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." Le v. Mullin, 311 F.3d 1002, 1025 (10th Cir. 2002) (quoting Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.1997).

13

The Tenth Circuit has held that, if appellate counsel files a brief on the merits, he should not raise every nonfrivolous claim. Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004). Rather, appellate counsel may select from among claims in order to maximize the likelihood of success. Id. Therefore, it is difficult to establish that appellate counsel was ineffective for failing to raise a particular issue. Id.

In order to determine whether appellate counsel's decision not to raise a particular issue constituted deficient performance, it is necessary to evaluate the merits of the omitted issue. Id. If the issue was so plainly meritorious that it would have been unreasonable to exclude it, even if the appeal was otherwise strong, then counsel's performance may have been unreasonable. Id. If the issue has some merit, but is not so compelling that its exclusion would have been unreasonable, than its merit should be weighed against the rest of the appeal, taking into account the deference that a court must give to any professional judgment on the part of counsel. Id. Finally, if the issue is meritless, counsel was not deficient for failing to raise it. Id.

It is important to remember that appellate counsel is restricted by the OCCA's rules regarding the length of a brief which may be filed. See Rule 9.3(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (limiting capital direct appeal briefs to no more than 100 pages); see also Garrison v. State, 103 P.3d 590, 612, n. 36 (Okla. Crim. App. 2004); Lott v. State, 98 P.3d 318, 351, n. 18 (Okla. Crim. App. 2004). Therefore, an appellate attorney must necessarily select out those claims he believes, in light of his

professional judgment, have the best chances of success.  See Jones v. Barnes, 463 U.S. 745,

751-752, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983); Battenfield v. State, 953 P.2d 1123,

1127-28 (Okla. Crim. App. 1998).  Doing so constitutes reasonable professional assistance.

Although the Supreme Court has suggested that "it is still possible to bring a

Strickland claim based on counsel's failure to raise a particular claim," it has also

acknowledged that "it is difficult to demonstrate that counsel was incompetent" in selecting

the issues he did raise and that only when ignored claims are clearly stronger than those

raised will a petitioner be able to prevail.  Robbins, 528 U.S. at 288, 120 S.Ct. at 965.

A review of Petitioner's direct appeal brief reveals that his appellate attorney raised

nineteen propositions of error and used all one hundred pages allotted to him by the state

court's rules.  DA Brief.  Petitioner's counsel also conducted an extensive investigation and

filed an application for an evidentiary hearing to support the claims raised in his brief.  Pet's

Application for an Evidentiary Hearing on Direct Appeal.  Included in Petitioner's brief were

claims of ineffective assistance of trial counsel, instructional errors, jury formation concerns,

jury misconduct concerns, double jeopardy, prosecutorial misconduct, and numerous issues

specific to capital sentencing. DA Brief.

In response to appellate counsel's claim that trial counsel was ineffective for failing

to use Mr. Littlejohn's testimony, the OCCA held as follows:

> A multiple felon and convicted murderer, Littlejohn briefly
> shared a county jail cell with co-defendant Jordan while
> awaiting capital resentencing in his own first-degree murder
> case. Littlejohn told defense investigators that Jordan admitted

> he was falsely throwing blame on Jones, that Jordan said Jones
> was not involved in the Howell murder at all, and that Jordan
> had even gone so far as to hide the murder weapon and other
> incriminating evidence in the Joneses' home himself. The fact
> that defense counsel actually did investigate Littlejohn's claim
> before trial reduces Jones's argument to one over trial strategy
> which, as Strickland instructs, is much more difficult to attack.
> Littlejohn's criminal history presented obvious credibility
> problems. While he had nothing to gain from testifying on
> Jones's behalf, he had little to lose by perjuring himself with
> claims that were impossible to corroborate. Moreover, the image
> of Jordan planting evidence in the attic of the Jones family
> home, without their knowledge, might have been somewhat
> difficult for the jury to believe. We find nothing unreasonable
> about counsel's decision to forgo Littlejohn's assistance.

Jones, 128 P.3d at 546.

On post-conviction review, the OCCA considered Petitioner's claim that trial counsel

and appellate counsels' failure to follow up on Mr. Littlejohn's information deprived him of

the testimony of Mr. Berry.  The OCCA found as follows:

> At the time of Petitioner's trial, Berry was being held in the
> Oklahoma County Jail on a charge of Child Abuse Murder.  He
> was later convicted of that charge and sentenced to life in prison
> without the possibility of parole.  Berry claims, by affidavit, that
> he overheard Petitioner's co-defendant, Christopher Jordan,
> boasting that he, not Petitioner, was the triggerman in the
> homicide with which they were jointly charged.
>
> Petitioner made a similar claim on direct appeal, alleging
> trial counsel was ineffective for not presenting the testimony of
> another jail inmate, Emmanuel Littlejohn, who also allegedly
> heard Jordan boast about being the triggerman.  We rejected that
> claim, because the inmate's credibility was suspect and the
> details of the account were specious.  Berry suffers from the
> same credibility problems that Littlejohn did.  Nor do we agree
> with Petitioner's argument that Berry's claim necessarily
> "corroborates" Littlejohn's.   Berry's affidavit suggests that

16

Jordan admitted Petitioner was involved in the murder, while according to Littlejohn, Jordan denied that Petitioner had any involvement. Taken together, these inmates' claims show only one thing: that Christopher Jordan changed his story to suit his own needs. Yet this much was already clear to the jury, through trial counsel's extensive cross-examination of Jordan, who testified against Petitioner at trial.

The posture of this case requires Petitioner to demonstrate not only that trial counsel failed to conduct a reasonably thorough investigation into witnesses potentially favorable to the defense, but that appellate counsel did as well. Petitioner claims appellate counsel "failed to investigate whether others heard Mr. Jordan's confessions in the jail," but he does not present specifics to show how a reasonable investigation would have uncovered Berry's current claim. Berry does not aver that he ever attempted to contact Petitioner's appellate counsel, and Petitioner does not explain how appellate counsel was supposed to find out about Berry's claims in any other way. If Berry had information he believed to be relevant to Petitioner's case, then he had a responsibility to reveal it timely. We will not find appellate counsel deficient for failing to be clairvoyant. Petitioner has failed to show either (1) that appellate counsel's investigation was not reasonable, or (2) that such investigation would have uncovered information that undermines confidence in the outcome of the trial.

PC Opinion, pages 10-11 (internal citations and footnote omitted).

Trial counsel David McKenzie provided appellate counsel with an affidavit which stated that he was present when Mr. Littlejohn was interviewed and then spoke to one of Mr. Littlejohn's attorneys about Mr. Littlejohn's credibility. DA Rule 3.11 Motion, Exhibit 7, page 3, ¶ 15. Mr. McKenzie was aware that a polygraph of Mr. Littlejohn was inconclusive. DA Rule 3.11 Motion, Exhibit 7, page 3, ¶ 15. Ultimately, Mr. McKenzie "concluded that

17

Mr. Littlejohn was not credible and should not be called as a witness during first stage."[4]  DA

Rule 3.11 Motion, Exhibit 7, page 3, ¶ 15.   Another of Petitioner's attorneys, Malcolm

Savage, stated in an affidavit that "based on the meeting with Mr. Littlejohn and information

received from others, I agreed with Mr. McKenzie that Mr. Littlejohn was not credible and

should not be called as a witness during first stage."  DA Rule 3.11 Motion, Exhibit 8, page

2, ¶ 10.

Two of Petitioner's trial attorneys interviewed Mr. Littlejohn, investigated the veracity

of his claim, and made a strategic decision that Mr. Littlejohn should not be called to testify

because he was not credible.

> [S]trategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on investigation.
> In other words, counsel has a duty to make reasonable

---

[4]Petitioner has provided this Court with another affidavit from Mr. McKenzie in which Mr. McKenzie confirms that his decision not to present Mr. Littlejohn's testimony at trial was a strategic one, but claims that "in retrospect" he should have followed up on Mr. Littlejohn's information.  Doc. 22 at 17.  First, the Supreme Court has held that counsel's performance should not be reviewed in hindsight.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  In addition, Mr. McKenzie's first affidavit makes it clear that he did, in fact, follow up on Mr. Littlejohn's information.  For the foregoing reasons, Respondent does not believe that Mr. McKenzie's second affidavit casts doubt on the OCCA's decision.  However, if it does, Petitioner's claim is unexhausted.  See Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997) (holding that evidence that places a claim in a significantly different posture must be presented to the state courts before the petitioner can seek habeas relief).  For the reasons set forth above regarding Petitioner's other ineffectiveness claims, Petitioner would be barred if he tried to return to the OCCA to present the new affidavit.  Accordingly, this Court should not consider the affidavit.

18

> investigations or to make a reasonable decision that makes
> particular investigations unnecessary. In any ineffectiveness
> case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a
> heavy measure of deference to counsel's judgments.

Strickland, at 690-691, 104 S.Ct. 2052.  Further, in order to establish that counsel's

performance was deficient, Petitioner must show it to be "completely unreasonable, not

merely wrong, so that it bears no relationship to a possible defense strategy."  Le v. Mullin,

311 F.3d 1002, 1025 (10th Cir. 2002) (quoting Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th

Cir.1997).  Petitioner cannot make this showing.  Accordingly, the OCCA's finding that trial

counsel was not ineffective was not contrary to or an unreasonable application of clearly

established federal law.

Appellate counsel raised a claim on direct appeal that Mr. McKenzie was ineffective

for failing to present Mr. Littlejohn's testimony.  DA Brief, page 41.  Appellate counsel

supported this claim with affidavits from: two expert witnesses on death penalty litigation;

Mr. Littlejohn; Petitioner's other trial attorney, Robin McPhail; and defense investigator

Robert Shelton,  DA Rule 3.11 Motion, Exhibits 2. 9, 10, 12, 13.  Appellate counsel cannot

be found to be ineffective for failing to ask every person that Mr. Jordan came into contact

with whether he told them that he committed the murder.  As found by the OCCA, Petitioner

failed to establish that his appellate attorneys' investigation of Mr. Littlejohn's information

was constitutionally deficient.

19

Finally, Petitioner has failed to demonstrate that he was prejudiced by the actions of his attorneys.  As found by the OCCA, Mr. Berry's affidavit does not corroborate the affidavit of Mr. Littlejohn.  Mr. Littlejohn was reportedly prepared to testify that Mr. Jordan stated that Petitioner was not present at the scene of the crime.  DA Rule 3.11 Motion, Exhibit 13.  Mr. Berry was reportedly prepared to testify that he overheard Mr. Jordan tell another individual--who has apparently not provided an affidavit--that he, Mr. Jordan, shot Mr. Howell and that his "partner" was charged with capital murder.  PC App. Exhibit 1.  As noted by the OCCA, the word partner implies that Petitioner was involved in the murder.  PC Opinion, page 10.

Mr. Littlejohn and Mr. Berry had obvious credibility problems, which would have only been exacerbated by the inconsistencies in their accounts.  Further, the evidence that Petitioner was the shooter went far beyond the testimony of Mr. Jordan.  The shooter was wearing a white T-shirt, jeans, red bandanna and black stocking cap.  Trial Tr. IV 108, 116.  Ladell King saw Petitioner driving Mr. Howell's Suburban, and wearing a white T-shirt, jogging pants, a bandanna and stocking cap, within thirty minutes of Mr. Howell's shooting.  Trial Tr. IV 136; Trial Tr. V 141, 144-158.  Mr. King's neighbor, Gordon Owens, also saw Petitioner with the Suburban approximately one hour after the shooting.  Trial Tr. V 268-270.  A third witness, Mr. King's wife, Vickson McDonald, saw Petitioner and the Suburban within thirty to sixty minutes after the murder.  Trial Tr. VII 142-144.  The murder weapon was found wrapped in a red bandanna in the attic above Petitioner's bedroom.  Trial Tr. VII

271-277; Trial Tr. IX 195-197.  Also in Petitioner's room were a white T-shirt with black trim and a black stocking cap.  Trial Tr. VIII 245.  Petitioner's car contained a box of .25 caliber bullets.  Trial Tr. VIII 253, 288-294.  Petitioner admitted to his girlfriend that a gun matching the description of the murder weapon belonged to him.  Trial Tr. IX 21-22, 26.

Mr. Jordan was driving the Cutlass before and after the shooting, and Petitioner drove the Suburban to Mr. King's home.  Trial Tr. IV 91; Trial Tr. V 141, 145.  It doesn't make sense that Mr. Jordan followed the Suburban, got out and shot Mr. Howell while Petitioner stayed in the car, then returned to the Cutlass at which time Petitioner got out and got in the Suburban.  There was not time for that.  Mr. Howell's father immediately ran out to check on his son, at which time the Suburban was already gone.  Trial Tr. IV 122-129.  Further, additional circumstantial evidence of Petitioner's guilt includes his attempt to flee from the police and his attempt to get his girlfriend, Analiese Presley, to lie on the stand.  Trial Tr. VII 146-148, 181-184, 206; Trial Tr. IX 44-48, 56-69.

In light of the suspect credibility of Mr. Littlejohn and Mr. Berry, the inconsistencies in their statements and the overwhelming evidence that Petitioner pulled the trigger, there is no reasonable probability that trial and appellate counsels' failure to use the testimony of Mr. Littlejohn and/or discover Mr. Berry's statements would have changed the outcome of the trial.  Further, as Petitioner was convicted of felony murder, it is immaterial in the guilt stage whether or not he actually fired the fatal shot.  See Fox v. State, 779 P.2d 562, 567-568

(Okla. Crim. App. 1989) (stating that in a prosecution for felony murder, it is immaterial which defendant actually committed the act that resulted in the victim's death).

With respect to sentencing, Petitioner has never alleged that he was ineligible for the death penalty.  See Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (holding that major participation in a felony, along with reckless indifference to human life, is sufficient to make a defendant death-eligible).  Any doubt that jurors might have had that Petitioner shot Mr. Howell was surely eliminated by evidence that Petitioner had committed armed robbery on three prior occasions--two of which were in the week before Mr. Howell was murdered--by pointing a gun at the head of his victims.  Trial Tr. XI 53, 58-62, 105-112, 119-127, 134-153; Trial Tr. XII 14-18, 58-60, 62-64.  There is no reasonable probability that the testimony of Mr. Littlejohn and/or Mr. Berry would have led to a different verdict or sentence.  Accordingly, Petitioner has failed to demonstrate that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.

## GROUND TWO

### THE OCCA'S DETERMINATION THAT PETITIONER'S TRIAL ATTORNEY WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A FRANKS V. DELAWARE HEARING WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.

Petitioner's second ground for relief is based on his trial attorney's failure to move to suppress the evidence discovered in Petitioner's parents' home.  Petitioner contends that the

search warrant affidavit contained materially false information.  The OCCA's finding that

trial counsel was not ineffective was not contrary to or an unreasonable application of clearly

established federal law.

Detective Anthony Fike obtained a search warrant for the home of Petitioner's parents

based on an affidavit containing the following factual averments:

> That on 07-28-99 at approximately 2130 hours Mr. Paul Scott
> Howell was shot and killed in the driveway of 727 East Drive,
> Edmond, Oklahoma County, Oklahoma and that his 1997 GMC
> Suburban bearing 1999 Oklahoma tag 947-39T Sand brown in
> color was stolen.  That the person who committed this crime was
> described by eyewitnesses as a B/M who was wearing a white
> T-shirt and a red bandanna and that the weapon was "silver" in
> color and that the same person drove away in the Suburban.
> That investigators recovered two (2) .25 caliber semi-auto shell
> casings from the scene and the medical examiner recovered a
> .25 caliber bullet from the body of the victim.   That an
> informant, Ladell King (a.k.a. Day-Day), was contacted and
> gave information that on 07-28-99 at about 2200 hours (30
> minutes after the crime) he saw Julius Jones driving the above
> described Suburban, and that he knew that Julius Jones
> habitually carried a chrome .22 or .25 caliber semi-auto pistol.
> That Ladell King directed investigators to the above address
> where Julius Jones resides with his parents.  That your affiant
> believes Julius Jones to be inside the residence due to Flowers
> of the Oklahoma City Police Department having spoken to
> Julius Jones on the telephone while we were present outside the
> residence.  Based on my training and experience I believe that
> the most logical place for the firearm, ammunition and articles
> of clothing to be is inside the above described residence.

O.R. I, pages 1-2.

On direct appeal, Petitioner claimed that his trial attorney was ineffective for failing

to request a hearing, pursuant to Franks v. Delaware, 438 U.S. 154, 171-172, 98 S.Ct. 2674,

2684-2685, 57 L.Ed.2d 667 (1978), on the veracity of the allegation in the affidavit that Petitioner was inside the residence.  In <u>Franks</u>, the Supreme Court held that search warrant affidavits are presumed valid, but a criminal defendant is entitled to have the evidence against him suppressed if: (1) the affiant made false statements; (2) the false statements were made deliberately or with reckless disregard for the truth; and (3) the affidavit would be insufficient to establish probable cause without the false material.  <u>Franks</u>, 438 U.S. at 154, 98 S.Ct. at 2674.  The OCCA found that a substantial basis for the warrant would have existed even if the affidavit had included information that Petitioner's parents told police that Petitioner was not in the home.  <u>Jones</u>, 128 P.3d at 536-537.  Accordingly, the OCCA held that trial counsel's performance was not deficient.  <u>Jones</u>, at 537.

In order to establish that his trial attorney was ineffective, Petitioner must prove both deficient performance and resulting prejudice.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To prove that counsel's performance was deficient Petitioner must overcome the strong presumption that counsel's conduct was reasonable and that counsel's actions might be considered sound trial strategy.  <u>Le v. Mullin</u>, 311 F.3d 1002, 1024-1025 (10th Cir. 2002).  Counsel's performance must be shown to be "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy."  <u>Le</u>, at 1025 (quoting <u>Hoxsie v. Kerby</u>, 108 F.3d 1239, 1246 (10th Cir.1997).  To demonstrate prejudice, Petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner has failed to establish that Detective Fike's statement that he believed Petitioner to be inside his parents' home was false. Detective Flowers testified at trial that he went to Petitioner's parents' home and, while outside, called Petitioner's phone number. Trial Tr. VII 177-181. Petitioner answered the phone. Trial Tr. VII 181. Detective Flowers told Petitioner that the house was surrounded and asked him to come outside. Trial Tr. VII 181. The front door to the house opened and someone looked out, but then the door was slammed shut. Trial Tr. VII 183. When Detective Flowers called back, a young female answered the phone and said that Petitioner was not there. Trial Tr. VII 183. Detective Flowers was still concerned that Petitioner might be in the house, even after he was told otherwise. Trial Tr. VII 188. According to his testimony, Detective Flowers did not know Petitioner was not in the house until after the tactical team entered the home. Trial Tr. VII 206.

Testimony from the hearing on Petitioner's motion to suppress also establishes that officers believed that Petitioner was, or could be, in the house.[5] August 2000 Tr. 34, 62, 107,

---

[5]Contrary to Petitioner's claim, the State has not agreed that officers knew the house was unoccupied. Petitioner cites to the State's response to his motion to suppress, which was based on a claim that the warrant was improperly served at night. As one of its many arguments in the response, the State argued that 22 O.S. § 1230, which requires warrants on occupied dwellings to be served during the day, was not violated because the house was not actually occupied when the warrant was served. O.R. II 212-213. By the time of the response, prosecutors knew Petitioner had fled the house shortly after he spoke with

112, 142, 163, 165, 180, 186, 219, 220; September 2000 Tr. 23, 27, 29.  Detective Mize, who

typed the probable cause affidavit, was never told that Petitioner might have left the house.

August 2000 Tr. 219.  Officers called out a hostage negotiator and used a loudspeaker and

throw phone to attempt to talk Petitioner out of the house.  August 2000 Tr. 144; September

2000 Tr. 23.  The tactical unit was called to search the house.  August 2000 Tr. 36.  In order

to gain entry, the tactical unit broke windows in the house and used a concussion grenade.

August 2000 Tr. 99.  There was no reason for police to have taken those steps unless they

believed that Petitioner could still be inside the house.  Petitioner has failed to demonstrate

that police made false statements.

In addition, Petitioner has failed to establish that the affidavit would be insufficient

to establish probable cause without the statement that Detective Fike believed Petitioner to

be in the house.  Even if Petitioner had left the home, police knew that he was in there when

they first arrived.  Therefore, Petitioner could have hidden incriminating evidence before he

fled.  "The residence of a person suspected of a crime is a natural place for concealing

evidence of that crime."  Jones, 128 P.2d at 536.  Thus, even without the statement that

officers believed Petitioner was still inside the house, the magistrate had sufficient

information to make a practical, common-sense determination that there was a fair

probability that evidence of the murder would be found in the home.  See Andrews v. State,

---

Detective Flowers.  However, the response does not contain an admission that the police
knew, when they sought the search warrant, that Petitioner was not inside the house.

166 P.3d 495, 497-498 (Okla. Crim. App. 2007) (setting forth the standard for determining

probable cause).  As any <u>Franks</u> objection made by counsel would have failed, Petitioner has

failed to establish that the OCCA's decision was contrary to or an unreasonable application

of clearly established federal law.

## GROUND THREE

### THE OCCA'S REJECTION OF PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIMS IS NEITHER CONTRARY TO NOR DOES IT INVOLVE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.

Petitioner's third ground for relief involves claims of prosecutorial misconduct.  The

OCCA's decision to deny Petitioner's prosecutorial misconduct claims was not contrary to

or an unreasonable application of clearly established federal law.  This proposition must be

denied.

The Supreme Court has held that instances of alleged prosecutorial misconduct do not

warrant relief unless the prosecutor's conduct renders a petitioner's trial fundamentally unfair

so as to constitute a violation of due process.  <u>See</u> <u>Greer v. Miller</u>, 483 U.S. 756, 765-767,

107 S.Ct. 3102,3109, 97 L.Ed.2d 618 (1987); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-

643, 647-48, 94 S.Ct. 1868, 1871, 1873-74, 40 L.Ed.2d 431 (1974); <u>Darden v. Wainwright</u>,

477 U.S. 168, 179-182, 106 S.Ct. 2464,2471-2472, 91 L.Ed.2d 144 (1986).

Further, the Tenth Circuit has held that prosecutors have wide latitude in closing

argument to draw reasonable inferences from the record.  <u>Thornburg v. Mullin</u>, 422 F.3d

1113, 1131 (10th Cir. 2005).  Finally, instructions given to the jury can remedy improper statements made by the prosecutor.  See Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (jury instructions that "their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence" helped remedy prosecutor's improper closing argument).

Petitioner raised his prosecutorial misconduct claim on direct appeal. DA Brief, pages 62-68.  The OCCA held as follows:

> Many of the errors claimed by Jones were not objected to at trial; therefore, we review those claims for plain error. Banks v. State, 2002 OK CR 9, ¶ 41, 43 P.3d 390, 401. After carefully reviewing the arguments and record, we find no plain error. Some of the errors claimed by Jones were objected to at trial and the objections were sustained by the trial court, most with instructions or admonishments, which cured any error that may have occurred. Slaughter, 1997 OK CR 78, ¶ 110, 950 P.2d at 869.
>
> Some of the instances Jones complains of were proper comments on the evidence, reasonable inferences based on the evidence, or evidentiary rulings by the trial court that were not an abuse of discretion. Bland v. State, 2000 OK CR 11 ¶ 97, 4 P.3d 702, 728. The jury was properly instructed that it was the finder of fact and that attorney argument was not evidence. Juries are presumed to follow their instructions. Turrentine v. State, 1998 OK CR 33, ¶ 26, 965 P.2d 955, 968. The comments were the typical sort of comments made during the normal course of closing argument and, as such, these instances of alleged improper comment fall within the broad parameters of effective advocacy and do not constitute error. Matthews v. State, 2002 OK CR 16, ¶ 38, 45 P.3d 907, 920.
>
> We address one complaint concerning an inflammatory demonstration by the prosecutor. During sentencing stage final closing argument, the prosecutor, in describing how the victim was killed, stated Jones held the gun to Howell's head while

28

simultaneously pointing her finger at a juror's head, as if demonstrating a gun pointed towards the juror's head. Trial counsel objected, but the prosecutor continued the demonstration using co-counsel as the victim.

This Court has previously upheld demonstrations that are based on the evidence presented at trial and not theatrical demonstrations. Gilbert v. State, 1997 OK CR 71, ¶ 94-95, 951 P.2d 98, 121. This demonstration was an attempt to illustrate the shooting based upon the evidence presented at trial; however, the conduct involving a juror cannot be condoned. Still, we find it was not so egregious as to elicit an emotional response rather than a rational judgment from the juror or the jury and it was not so prejudicial as to deprive Jones of a fair sentencing proceeding.[6]

"Allegations of prosecutorial misconduct will not cause a reversal of judgment or modification of sentence unless their cumulative effect is such as to deprive the defendant of a fair trial and fair sentencing proceeding." Spears v. State, 1995 OK CR 36, ¶ 60, 900 P.2d 431, 445. This Court looks at the entire record to determine whether the cumulative effect of improper conduct by the prosecutor prejudiced an appellant causing plain error. Romano v. State, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 115. Having reviewed the entire record, we find neither reversal nor modification is warranted on this proposition.

---

[6]Although Petitioner mentions the prosecutor's demonstration in the proposition heading of his habeas petition, he fails to discuss it, or even mention it, in the body of his argument.  Doc. 22 at 28-30.  Nor does Petitioner provide this Court with a citation to the part of the record in which this alleged misconduct occurred.  Doc. 22 at 28-30. Accordingly, Petitioner has waived any alleged error.  Cf. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").  In any event, as was discussed in proposition I, the evidence against Petitioner in both the guilt and sentencing stages was overwhelming.  Petitioner was a privileged child who inexplicably engaged in a string of violent crimes, culminating in cold-blooded murder.  Petitioner has failed to establish that the OCCA's finding that the prosecutor's brief demonstration, which the defense objected to, causing the prosecutor to stop using a juror, deprived him of a fair sentencing proceeding.

Jones, 128 P.3d at 544-545.

1.      **The prosecutor's alleged personal opinion that Petitioner was the shooter.**

The Tenth Circuit has held that "[a]rgument or evidence is impermissible vouching

only if the jury could reasonably believe that the prosecutor is indicating a personal belief in

the witness' credibility, either through explicit personal assurances of the witness' veracity

or by implicitly indicating that information not presented to the jury supports the witness'

testimony."   United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990).

During first stage closing argument, the prosecutor was explaining circumstantial

evidence when she stated that "the State of Oklahoma contends that we know Julius Jones

is the shooter in this case." Trial Tr. X 48. After the defense objected, the trial court told the

prosecutor to rephrase her statement and instructed the jury that "anything that the attorneys

say is for purposes of persuasion only.  You are the trier of fact.  And you will determine

what the facts are in this case." Trial Tr. X 48.  The prosecutor then went on to discuss the

circumstantial evidence that proved that Petitioner shot Mr. Howell. Trial Tr. X 48-49.  Read

in context, the prosecutor's statement was a proper comment on the evidence, rather than an

expression of her personal opinion.  In any event, the court's instruction cured any error. See

Darden v. Wainwright, 477 U.S. at 182 (jury instructions that "their decision was to be made

on the basis of the evidence alone, and that the arguments of counsel were not evidence"

helped remedy prosecutor's improper closing argument); United States v. Almaraz, 306 F.3d

1031, 1037 (10th Cir. 2002) ("We presume jurors attend closely to the language of the instructions in a criminal case and follow the instructions given them.").

Petitioner cites to page 59 in volume ten of the transcript as another instance of the prosecutor giving her personal opinion that Petitioner was the shooter and that Mr. Jordan was not the shooter.  Respondent is unable to find any such instance on that page, in which the prosecutor is telling the jury about the felony murder rule and explaining that the State does not have to prove who fired the shot.  Trial Tr. X 59.  Perhaps Petitioner is referring to the prosecutor's statement that Mr. Jordan pled guilty to first degree murder because as the driver he is responsible, "although, he didn't pull the trigger."  Mr. Jordan testified that he drove to the area where the Suburban stopped and that he was in or near his car when he heard a gunshot.  Trial Tr. VIII 151-164.  Therefore, this statement was also a comment on the evidence, and did not indicate a personal belief in Mr. Jordan's veracity or imply that information not presented to the jury supported his testimony.

Finally, while going through the elements of the crime, the prosecutor told the jury that it was "the State's contention" that Petitioner pulled the trigger.  Trial Tr. X 61-62.  Again, this statement was a proper comment on the evidence, and did not indicate a personal belief in Mr. Jordan's veracity or imply that information not presented to the jury supports his testimony.  Petitioner has failed to establish that the prosecutor gave her personal opinion or vouched for Mr. Jordan's credibility, or that her comments deprived him of a fundamentally fair trial.

31

2.      **The prosecutor's alleged misstatement of Ms. Presley's testimony.**

Petitioner next contends that the prosecutor misquoted Ms. Presley's testimony. Petitioner has waived this claim by failing to cite any authority for the proposition that misquoting a witness constitutes misconduct. <u>Cf</u>. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); <u>see also</u> <u>Johnson v. Mullin</u>, No. CIV-04-1602-L, 2006 WL 1804558 (W.D.Okla. June 28, 2006) (unpublished op.) (holding that a petitioner who is represented by counsel, should provide the Court with arguments based on Supreme Court authority to support his claims).  Ms. Presley testified that Petitioner told her that he and Mr. Jordan were not there for the shooting, but were supposed to take the car to its destination.  Trial Tr. IX 34-35.  In closing argument, the prosecutor said that Petitioner told Ms. Presley that his only involvement was driving away from the scene.  Trial Tr. X 81, 91.  The prosecutor's point was that Petitioner is guilty of felony murder even if he did not pull the trigger--so long as he was involved in the underlying felony--which his statement to Ms. Presley that he was supposed to take the car to its destination proves.

In any event, this statement did not deprive Petitioner of a fair trial.  In his closing argument, defense counsel told the jury that he did not remember Ms. Presley saying that Petitioner told her he was attempting to take the car from the murder scene.  Trial Tr. X 107. Rather defense counsel believed Ms. Presley testified that Petitioner told her that he was

taking the vehicle to it final destination when he was caught on tape at the Central Grocery Store. Trial Tr. X 107. The jury was presented with conflicting interpretations of Ms. Presley's testimony and was free to accept or reject those interpretations. Ultimately, however, in light of all of the evidence discussed in proposition I that does place Petitioner at the scene, it is irrelevant what Ms. Presley said. For that reason, the OCCA's decision was not contrary to or an unreasonable application of clearly established federal law.

**3.     The prosecutor's statement that Mr. Howell would have given Petitioner the keys.**

Petitioner also claims that the prosecutor improperly appealed to the jury's sympathy for Mr. Howell when the speculated that Mr. Howell would have given Petitioner the keys if Petitioner had asked for them. Again, Petitioner has waived this claim by failing to support it with authority. Cf. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); see also Johnson v. Mullin, No. CIV-04-1602-L, 2006 WL 1804558 (W.D.Okla. June 28, 2006) (unpublished op.) (holding that a petitioner who is represented by counsel, should provide the Court with arguments based on Supreme Court authority to support his claims).

During first stage closing argument, the prosecutor was discussing the elements of robbery with a firearm. Trial Tr. X 61-62. In discussing the element requiring the use of force or fear, the prosecutor stated that Mr. Howell did not have the opportunity to give Petitioner the vehicle through fear because Petitioner did not give him that chance. Trial Tr.

X 63-64.  The prosecutor argued that because Mr. Howell's sister and children were in the car, Mr. Howell would have willingly given Petitioner the vehicle.  Trial Tr. X 64.  During the penalty stage, the prosecutor said that the victim impact evidence established that Mr. Howell loved his family and would have given Petitioner the keys to the car.  Trial Tr. XV 147.  These statements were reasonable conclusions to draw from the evidence.  The statements did not invite sympathy for Mr. Howell.  Rather, they emphasized the senselessness of Petitioner's decision to kill Mr. Howell.  The OCCA's determination that Petitioner was not denied a fair trial was not contrary to or unreasonable application of clearly established federal law.

**4.     The prosecutor's alleged encouragement to disregard mitigating evidence and personal opinion that the aggravating evidence outweighed the mitigating evidence.**

In her closing argument, the prosecutor argued that nothing Petitioner had done gave the jury a reason to show sympathy or mercy based on the law and evidence that was presented to them.  Trial Tr. XV 187.  The prosecutor then argued that the mitigating circumstances offered by Petitioner did not meet the definition the jury was given.[7]  Trial Tr. XV 187-191.  The prosecutor also "submit[ted]" to the jury that they would find no question that the facts of the case and the aggravating factors far outweigh any mitigation they might find.  Trial Tr. XV 195.

---

[7]The jury was instructed that "Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame." O.R. VIII, page 1420.

34

As an initial matter, Petitioner's reliance on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) is misplaced.  In Caldwell, the Supreme Court found error in a statement by the prosecutor that led the jury to believe that the responsibility for determining that a death sentence was appropriate rested with an appellate court, rather than the jury.  Caldwell, 472 U.S. at 328-334, 105 S.Ct. at 2639-2642.  In order to establish a violation of Caldwell, the defendant must show that the prosecutor's comments "improperly described the role assigned to the jury by local law." Romano v. Oklahoma, 512 U.S. 1, 8-9, 114 S.Ct. 2004, 2009-2010, 129 L.Ed.2d 1 (1994).  Petitioner has failed to cite to any comments in which the prosecutor attempted to diminish the jury's sense of responsibility for sentencing Petitioner to death.

According to clearly established Supreme Court precedent, "a capital sentencer may not refuse to consider, nor be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any circumstance of the offense which the defendant proffers as a basis for the imposition of a sentence less than death." Bryson v. Ward, 187 F.3d 1193, 1205 (10th Cir. 1999) (citing Lockett v. Ohio, 438 U.S. 586, 604-605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion holding that a statute that prevented jurors from considering certain mitigating evidence violated the Eighth and Fourteenth Amendments)).

In Boyde v. California, 494 U.S. 370, 373-374, 110 S.Ct. 1190, 1194, 108 L.Ed.2d 316 (1990), the jury was given a list of eleven factors to consider, including "[a]ny other

circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime."  The defendant complained that this instruction prevented the jury from considering evidence of his character and background because such evidence did not extenuate the gravity of the crime.  Boyde, 494 U.S. at 378, 110 S.Ct. at 1196-1197.  The Supreme Court began by reiterating that a jury must be able to consider and give effect to all relevant mitigating evidence.  Id. at 377-378, 110 S.Ct. at 1195.  Thus, the Court held that the proper test is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  Id. at 380, 110 S.Ct. at 1198.  The Court noted that evidence that might extenuate the crime "certainly includes" a defendant's background and character.  Id. at 382, 110 S.Ct. at 1199; see also Ayers v. Belmontes, 549 U.S. 7, 15, 127 S.Ct. 469, 475, 166 L.Ed.2d 334 (2006) (holding that even the likelihood of *future* good conduct falls within the definition of factor k).  The Court found it unlikely that a reasonable juror would believe that the instruction prevented them from considering the four days of evidence presented by the defense, all of which related to the defendant's background and character.  Id. at 383-384, 110 S.Ct. at 1199-1200.  For the foregoing reasons, the Court found no reasonable likelihood that jurors felt precluded by their instructions from considering relevant mitigating evidence. Id. at 386, 110 S.Ct. at 1201.

The defendant in Boyde further claimed, as Petitioner does, that arguments made by the prosecutor led the jury to believe that they should disregard mitigating evidence.  The

prosecutor argued that the defendant's mitigating evidence did not "'suggest that [petitioner's] crime is less serious or that the gravity of the crime is any less,'" and that "'[n]othing I have heard lessens the seriousness of this crime.'" Id. at 385, 110 S.Ct. at 1200. The Court held that "arguments of counsel generally carry less weight with a jury than do instructions from the court." Id. at 384, 110 S.Ct. at 1200. The Court found no objectionable argument because the prosecutor did not tell the jury not to consider the mitigating evidence, but urged the jury to find that petitioner was still responsible for his crimes. Id. at 386, 110 S.Ct. at 1200-1201.

Subsequently, in Brown v. Payton, 544 U.S. 133, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court considered a case in which the prosecutor argued that jurors should not consider the defendant's mitigating evidence. The Court found that, in the context of the trial as a whole, the state court's finding that the prosecutor's incorrect argument did not prevent the jury from considering the defendant's mitigating evidence was not unreasonable. Payton, 544 U.S. at 144, 125 S.Ct. at 1440. In so holding, the Court noted that the defense presented two days of testimony without objection from the prosecution, that defense counsel told the jury they could consider the mitigating evidence, and that the prosecutor also disputed the substance of the defendant's evidence and compared it to the evidence in aggravation. Id. at 144-146, 125 S.Ct. at 1440-1441.

In the instant case, the defense presented eleven mitigating witnesses over the course of two days. Trial Tr. XIII 133-277; Trial Tr. XV 4-127. The jury was instructed that it was

up to them to determine what circumstances are mitigating. O.R. VIII, page 1420. Another instruction specifically authorized the jury to consider the evidence presented by Petitioner during the sentencing phase of the trial. O.R. VIII, page 1433. The jury was further given a list of twenty-nine mitigating factors, which included both crime-specific factors such as a lack of premeditation and non-crime factors such as the fact that Petitioner has a family that loves him. O.R. VIII, pages 1421-1425. As the Supreme Court has recognized, these non-crime factors can also extenuate or reduce the degree of moral culpability or blame. The instruction specifically referred to these items as "mitigating circumstances." O.R. VIII, page 1421.

In their closing argument, Petitioner's attorneys repeatedly urged the jury to show Petitioner mercy and extensively argued non-crime mitigating factors. Trial Tr. XV 154, 157-169. In fact, defense counsel made brief references to only two crime-related factors-- Petitioner's age and his alleged brain damage. Trial Tr. XV 153-169. The prosecutor did not object to the relevance of the mitigating evidence when it was introduced or when it was argued by defense counsel.

The prosecutor urged the jury to "look at all of the evidence that you have heard during the course of this trial." Trial Tr. XV 171. The prosecutor also stated that one of the defense attorneys "spen[t] a great deal of time talking about the mitigating circumstances in this case." Trial Tr. XV 175. In addition, the prosecutor extensively discussed the mitigating evidence--arguing that not all the factors listed in the jury instructions were proven,

contrasting it with the aggravating circumstances and arguing that it was insufficient to justify showing Petitioner mercy.  Trial Tr. XV 182, 186-188, 195, 197-198, 200, 205, 207-208.  It would have been pointless for the prosecutor to devote so much time to discussing Petitioner's evidence if the jury could not consider it.  See Payton, 544 U.S. at 145, 125 S.Ct. at 1441.

In light of the jury instructions as a whole, the arguments of defense counsel, and the entirety of the prosecutor's closing argument, there is no reasonable likelihood that the jury believed that it was not allowed to consider the evidence that was the very focus of those arguments.  Further, the prosecutor's argument that the aggravating circumstances outweighed the mitigating circumstances was just that--argument regarding the weight of the evidence.  Accordingly, the OCCA's decision was not contrary to or an unreasonable application of clearly established federal law.

**5.      The prosecutor's "crying antics."**

In opening statements, as the prosecutor told the jury about the last minutes of Mr. Howell's life, she apparently got emotional, although she stated that she did not cry openly. Trial Tr. IV 32-33.  The court took a brief recess and denied Petitioner's motion for a mistrial finding that the prosecutor was not overly emotional and that it was not going to taint the jury.  Trial Tr. IV 33-34.  Subsequently, during direct examination of Mr. Howell's father in the penalty stage, defense counsel approached the bench to object to the prosecutor

"showing emotions." Trial Tr. XIII 127.  The court denied Petitioner's motion for a mistrial. Trial Tr. XIII 127.

In his prosecutorial misconduct proposition, Petitioner briefly refers to the prosecutor's "crying antics."  Respondent assumes Petitioner was referring to the aforementioned occasions, although Petitioner does not cite to these instances in the record, thereby waiving this claim.  Cf. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

When faced with a similar claim, a Louisiana District Court noted that there is a dearth of case law addressing prosecutorial misconduct claims in which the prosecutor cried during trial.  Richthofen v. Cain, No. 05-5701, 2008 WL 630477, n. 43 (E.D.La. March 7, 2008) (unpublished op.).  However, the court noted that relief was denied in every case it could find.  Id.; see also Hill v. State, 977 S.W.2d 234, 237 (Ark. App. 1998) (finding that the prosecutor's tears did not amount to an improper appeal to the jurors' passions); Gibbins v. State, 495 S.E.2d 46, 51 (Ga. App. 1997) (finding no error in trial court's refusal to grant a mistrial because the prosecutor, victim, victim's mother and witnesses cried during closing argument where the record did not show that the tears disrupted the court or affected the jury); Coburn v. State, 461 N.E.2d 1154, 1159 (Ind. App. 2 Dist. 1984) (finding no prejudice when prosecutor cried during defense counsel's closing argument).

40

The prosecutor teared up very briefly two times during a very emotional trial. The jury was instructed not to consider sympathy in reaching their verdicts, except for sympathy for Petitioner at sentencing. O.R. VIII, pages 1364, 1433. Jurors are presumed to follow their instructions. United States v. Kelly, 535 F.3d 1229, 1238, n. 6 (10th Cir. 2008). The evidence against Petitioner was discussed in ground one of this response, and was overwhelming with respect to guilt and the aggravating factors. In light of the strength of the evidence, the prosecutor's brief displays of emotion did not deprive Petitioner of a fundamentally fair trial. Accordingly, the OCCA's decision was not contrary to or an unreasonable application of clearly established federal law.

## GROUND FOUR

**THE OCCA'S FINDING THAT THE TRIAL COURT PROPERLY EXCUSED JUROR MCPEAK FOR CAUSE WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

In his fourth ground for relief, Petitioner claims that the trial court improperly removed for cause a juror, Mr. McPeak, who had only a general opposition to the death penalty and who indicated that he could consider all three punishment options. The OCCA properly found that Juror McPeak's responses were unequivocal and denied Petitioner's claim. This decision was not contrary to or an unreasonable application of clearly established federal law.

41

During voir dire, the trial court asked the jurors if they would either always vote for the death penalty or never vote for it.  Trial Tr. II(A) 156.  Juror McPeak stated that he believed he would never vote for the death penalty.  Trial Tr. II(A) 156.  Juror McPeak then stated that he would be able to listen to the evidence and follow the law.  Trial Tr. II(A) 157.  Juror McPeak also said he would consider all three punishments, after which the court asked Juror McPeak about his earlier statement that he would not ever vote for the death penalty.  Trial Tr. II(A) 157-158.  Juror McPeak replied that he "wouldn't vote for the death penalty, but [he] would vote for the other two before [he] voted for the death penalty, if it came down to that."  Trial Tr. II(A) 158.  The trial court expressed confusion, after which Juror McPeak stated, "I guess what I mean is that I would not vote for the death penalty, no."  Trial Tr. II(A) 158.  Juror McPeak confirmed that he would "under no circumstances vote for the death penalty" and that he was firm in his answer.  Trial Tr. II(A) 158-159.  Juror McPeak was excused over Petitioner's objection.  Trial Tr. II(A) 159.  The trial court was of the opinion that any further questions would confuse Juror McPeak.  Trial Tr. II(A) 159.

On direct appeal, the OCCA made a factual finding that Juror McPeak "clearly stated he could not and would not vote for the death penalty under any circumstances."  Jones, 128 P.3d at 534.  The OCCA deferred to the trial court, who was able to observe Juror McPeak's demeanor, and found that Juror McPeak's "unequivocal responses were sufficient for the trial court to dismiss him for cause."  Id.  The OCCA further found no error in the trial court's refusal to allow defense counsel to question Juror McPeak further.  Id.

42

A trial court may excuse a prospective juror for cause when his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Uttecht v. Brown, 127 S.Ct. 2218, 2233, 167 L.Ed.2d 1014 (2007) (quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). This standard requires a reviewing court to accord deference to the trial court because of that court's ability to observe the juror's demeanor. Brown, 127 S.Ct. at 2233. This deference is especially required of federal courts considering habeas petitions. Id. at 2231. A juror's bias need not be "unmistakably clear." Id. Rather, the trial court is entitled to construe ambiguity in the juror's statements in favor of the State. Id. In Brown, the potential juror stated six times that he could consider the death penalty or follow the law. Id. at 2227. However, the juror also gave equivocal responses regarding his ability to vote for the death penalty if the defendant would not have the opportunity to reoffend. Id. at 2226-2227. The Supreme Court held that the trial court acted well within its discretion in excusing the juror. Id. at 2228. Specifically, the Court found that the juror's

> assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case because there was no possibility of release. His assurances did not require the trial court to deny the State's motion to excuse Juror Z.

Id. at 2229.

In this case, Juror McPeak repeatedly stated that he could not vote for the death penalty. Juror McPeak's statement that he would consider the death penalty was, at best,

ambiguous and confusing.  The trial court was able to observe Juror McPeak's demeanor and found that he would not be able to follow the law.  Trial Tr. II(A) 159.  In light of Juror McPeak's statements that he would not vote for the death penalty, and especially considering the deference this Court must afford to the trial court's ruling, Petitioner has failed to establish that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.

Petitioner briefly asserts, without citation to authority, that the trial court did not give defense counsel the opportunity to ask Juror McPeak to clarify his position.  Doc. 22 at 30-31; see Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").  Petitioner's failure to cite any authority prevents him from demonstrating that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.  See Johnson v. Mullin, No. CIV-04-1602-L, 2006 WL 1804558 (W.D.Okla. June 28, 2006) (unpublished op.) (holding that a petitioner who is represented by counsel, should provide the Court with arguments based on Supreme Court authority to support his claims).  Further, the Tenth Circuit has rejected similar claims.  See Brown v. Sirmons, 515 F.3d 1072, 1081 (10th Cir. 2008) (noting that the petitioner conceded that there is no constitutional right to rehabilitate a juror and holding that the OCCA did not unreasonably apply federal law in determining that the trial court acted well within its discretion in its conduct of voir dire); Moore v. Gibson, 195 F.3d 1152, 1170 (10th Cir.

44

1999) (finding that the trial court was not constitutionally required to give defense counsel

an opportunity to further question a potential juror who was not death-qualified).

Accordingly, this claim for relief must be denied.

## **GROUND FIVE**

### **THE OCCA'S HOLDING THAT PETITIONER WAS PRESENT FOR ALL CRITICAL STAGES OF HIS TRIAL WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

As his fifth ground for relief, Petitioner claims that he was deprived of his right to be

present at all critical stages of his trial.  The OCCA's rejection of this claim was not contrary

to or an unreasonable application of clearly established federal law.  Accordingly, this claim

must fail.

Petitioner raised this claim on direct appeal.  DA Brief, pages 59-62.  The OCCA

found that

> [t]he record shows Jones was present for all critical stages. Jones was present at all times the jury was in the courtroom, except for one occasion when the jury was brought into the courtroom for the sole purpose being dismissed for the day...Appellant here has not specifically shown how his presence was necessary at these various hearings or how he was deprived of his opportunity to defend his case by his absence. We find no statutory violation, no due process violation and no error.

Jones, 128 P.3d at 544.

45

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987).   The defendant has the right to be present if "his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."  Snyder v. Massachusetts, 291 U.S. 97, 105-106, 108, 54 S.Ct. 330, 332, 333, 78 L.Ed. 674 (1934).  Thus, due process does not require the presence of the defendant when his presence would be useless or only slightly beneficial.  Valdez v. Gunter, 988 F.2d 91, 93 (10th Cir. 1993) (citing Snyder, 291 U.S. at 106-07, 54 S.Ct. at 332).

In United States v. Gagnon, 470 U.S. 522, 523-524, 105 S.Ct. 1482, 1483, 84 L.Ed.2d 486 (1985), the district judge had a conversation with a juror regarding the juror's concern that the defendant was sketching the jurors during trial.  The defendant's counsel was present for the conversation, but the defendant himself was not present.  Gagnon, 470 U.S. at 523-524, 105 S.Ct. at 1483.  The Supreme Court found that the defendant's due process rights were not violated by his absence at the conversation, which was "not the sort of event which every defendant had a right personally to attend."  Id. at 526-527, 105 S.Ct. at 1484.  Further, the Court recognized that the defendant could not have done anything at the conference and would not have gained anything by his presence.  Id. at 527, 105 S.Ct. at 1484-1485.

Similarly, the Tenth Circuit has repeatedly recognized that a defendant does not have a constitutional right to be present during hearings that encompass purely legal issues. <u>See</u> <u>Bland v. Sirmons</u>, 459 F.3d 999, 1020-1021 (10th Cir. 2006) (finding no constitutional violation in defendant's absence from part of voir dire in which the court interviewed potential jurors individually in chambers regarding pre-trial publicity); <u>United States v.</u> <u>Zabriskie</u>, 415 F.3d 1139, 1147, n. 10 (10th Cir. 2005) (approving trial judge's decision to question juror regarding his ability to continue deliberations in the absence of both the defendant and defense counsel); <u>Rascon v. LeMaster</u>, No. 02-2028, 42 Fed.Appx. 249, 2002 WL 1365610 (10th Cir. June 25, 2002) (unpublished op.) (finding no due process violation when defendant was not present at a hearing regarding his request to access the victim's psychiatric records); <u>Tafoya v. Tansy</u>, No. 00-2049, 9 Fed.Appx. 862, 872-873, 2001 WL 557971 (10th Cir. May 24, 2001) (unpublished op.) (finding no right to be present during in-chambers meetings with jurors and other meetings regarding evidentiary matters, witnesses' discussions of the case outside of court and a motion for a mistrial); <u>Valdez v. Gunter</u>, 988 F.2d 91, 93-94 (10th Cir. 1993) (finding no right to be present at bench conference regarding whether a tape recording should be replayed for the jury); <u>United States v. Santiago</u>, 977 F.2d 517, 522-523 (10th Cir. 1992) (finding that trial judges may question jurors regarding potential bias in the absence of the defendant, and often in the absence of counsel); <u>Larson</u> <u>v. Tansy</u>, 911 F.2d 392, 395 (10th Cir. 1990) (holding that the defendant was not deprived of due process by his absence from the jury instruction conference, which traditionally

encompasses purely legal issues); see also United States v. Bertoli, 40 F.3d 1384, 1397 (3d Cir.1994) ( "It is clear that there is no *constitutional* right for a defendant to be present at a conference in chambers concerning dismissal of a juror.").

In the instant case, Petitioner's presence was waived by his attorney[8] for the following hearings: a hearing regarding at which laboratory the State should do destructive DNA testing; a hearing regarding whether one witness testified truthfully regarding his expectation of leniency for a pending charge and whether another witness disclosed all of his pending charges; a hearing regarding potentially suspicious telephone calls received by some jurors; a hearing regarding what jury instructions to give; an admonition to the jury not to talk about the case during a break in deliberations so that the jurors could move their cars out of the parking garage; and a hearing regarding a comment possibly indicating that a juror had made up his mind about the sentence before hearing all of the evidence. 3/8/01 Hearing; Trial Tr.

---

[8]Petitioner's habeas counsel baldly asserts that the waivers were made against Petitioner's wishes, however, there is no indication in the record of the direct appeal, post-conviction or habeas petition that Petitioner wanted to be present. Petitioner has not even provided this Court with an affidavit to that effect. In fact, these is evidence that Petitioner was not interested in being present at such proceedings. During a discussion of the admissibility of victim impact evidence, Petitioner asked to be removed from the courtroom. Trial Tr. XII 114. However, in light of the Tenth Circuit's decision in United States v. Gomez, 67 F.3d 1515 (10th Cir. 1995), Respondent does not argue that Petitioner waived his right to be present. See Gomez, 67 F.3d at 1528 (stating that even if defense counsel could waive a defendant's right to be present, he must first obtain the defendant's consent to the waiver and, in the absence of a record indicating the defendant's consent, the Court cannot agree that the defendant waived his right to be present).

V 127-135; Trial Tr. VI 33-89; Trial Tr. VII 5-137; Trial Tr. X 3-42, 184-185; Trial Tr. XIII 27-91.

Each of the hearings/conferences that Petitioner did not attend involved purely legal issues. Although some of the conferences required the trial court to obtain factual information--e.g. did the witnesses testify truthfully--the ultimate decisions to be made by the court were legal ones--e.g. what is the remedy if the witnesses omitted information from their testimony. There is nothing Petitioner could have added to these matters and nothing would have been gained by his presence. Indeed, Petitioner does not even attempt to argue that his presence would have made a difference. Accordingly, Petitioner has failed to establish that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law. Moreover, for the same reason, any error in Petitioner's absence is harmless. See Wilson v. Sirmons, 536 F.3d 1064, 1073-1074 (10th Cir. 2008) (an error is harmless unless it had a substantial and injurious effect on the juries verdict); Gomez, 67 F.3d at 1528 (holding that the right to be present is subject to harmless error analysis); United States v. Rodriguez, 67 F.3d 1312, 1316 (7th Cir.1995) (holding any error regarding right to be present harmless "if the issue is not one on which counsel would be likely to consult the defendant, or if it is not one for which the defendant, if consulted, would be likely to have an answer that would sway the judge").

## GROUND SIX

**THE OCCA'S DETERMINATION THAT PETITIONER WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS NEITHER CONTRARY TO NOR DID IT INVOLVE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

Petitioner's sixth ground for relief is a claim that the OCCA's determination that his appellate attorney was not ineffective was either contrary to or involved an unreasonable application of clearly established federal law. Because the OCCA's merits decision does not run counter to applicable Supreme Court precedents, Petitioner cannot obtain any federal habeas relief on his claim. Therefore, this Court must deny Petitioner's sixth ground.

The test for claims of ineffective assistance of appellate counsel is the same as that used in evaluating claims that trial counsel was ineffective. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). Therefore, Petitioner must show that appellate counsel's performance was unreasonable and that he suffered prejudice, that is, that there is a reasonable probability that, had the errors complained of not been made, the result of the appeal would have been different. Smith, at 285, 120 S.Ct. at 764; see also, Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068-2069, 80 L.Ed.2d 674 (1984). To prove that counsel's performance was deficient Petitioner must overcome the strong presumption that counsel's conduct was reasonable and that counsel's actions might be considered sound trial strategy. Id. A reviewing court must make every effort to "eliminate the distorting effects of hindsight" and evaluate counsel's performance in light of his

50

perspective at the time of trial.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Counsel's

performance must be shown to be "completely unreasonable, not merely wrong, so that it

bears no relationship to a possible defense strategy."  Le v. Mullin, 311 F.3d 1002, 1025

(10th Cir. 2002) (quoting Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.1997)).

The Tenth Circuit has held that, if appellate counsel files a brief on the merits, he

should not raise every nonfrivolous claim.  Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir.

2004).  Rather, appellate counsel may select from among claims in order to maximize the

likelihood of success.  Id.  Therefore, it is difficult to establish that appellate counsel was

ineffective for failing to raise a particular issue.  Id.

In order to determine whether appellate counsel's decision not to raise a particular

issue constituted deficient performance, it is necessary to evaluate the merits of the omitted

issue.  Id.  If the issue was so plainly meritorious that it would have been unreasonable to

exclude it, even if the appeal was otherwise strong, then counsel's performance may have

been unreasonable.  Id.  If the issue has some merit, but is not so compelling that its

exclusion would have been unreasonable, than its merit should be weighed against the rest

of the appeal, taking into account the deference that a court must give to any professional

judgment on the part of counsel.  Id.  Finally, if the issue is meritless, counsel was not

deficient for failing to raise it.  Id.

It is important to remember that appellate counsel is restricted by the OCCA's rules

regarding the length of a brief which may be filed.  See Rule 9.3(A), Rules of the Oklahoma

51

Court of Criminal Appeals, Title 22, Ch. 18, App. (limiting capital direct appeal briefs to no more than 100 pages); see also Garrison v. State, 103 P.3d 590, 612 fn. 36 (Okla. Crim. App. 2004); Lott v. State, 98 P.3d 318, 351, fn. 18 (Okla. Crim. App. 2004).   Therefore, an appellate attorney must necessarily select out those claims he believes, in light of his professional judgment, have the best chances of success.  See Jones v. Barnes, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983); Battenfield v. State, 953 P.2d 1123, 1127-28 (Okla. Crim. App. 1998).  Doing so constitutes reasonable professional assistance.

A review of Petitioner's direct appeal brief reveals that his appellate attorney raised nineteen propositions of error and used all one hundred pages allotted to him by the state court's rules.  DA Brief.  Petitioner's counsel also conducted an extensive investigation and filed an application for an evidentiary hearing to support the claims raised in his brief.  Pet's Application for an Evidentiary Hearing on Direct Appeal.  Included in Petitioner's brief were claims of ineffective assistance of trial counsel, instructional errors, jury formation concerns, jury misconduct concerns, double jeopardy, prosecutorial misconduct, and numerous issues specific to capital sentencing. DA Brief.

Although the Supreme Court has suggested that "it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim," it has also acknowledged that "it is difficult to demonstrate that counsel was incompetent" in selecting the issues he did raise and that only when ignored claims are clearly stronger than those raised will a petitioner be able to prevail.  Robbins, 285 U.S. at 288, 120 S.Ct. at 965.

Petitioner has failed to show that the ineffective assistance of trial counsel claims he identifies in his petition are clearly stronger than any of the claims his appellate counsel actually presented to the OCCA.  As such, Petitioner's ineffective assistance of appellate counsel claim is meritless.

**1.      Appellate and trial counsels' failure to discover Juror Whitmire's convictions**

In his first ineffective assistance of counsel claim, Petitioner claims that appellate and trial counsel were ineffective for failing to discover that Juror Whitmire had "an extensive record of contacts" with the legal system.  Doc. 22 at 33.  It should first be noted that Petitioner's argument consists of nothing more than a one-sentence statement that appellate counsel and trial counsel failed to discover juror Whitmire's alleged misconduct.  See id. Petitioner makes no further argument and does not cite any record or authority regarding juror misconduct.  Petitioner cannot demonstrate that the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law when he fails to even identify controlling Supreme Court authority.  Cf. Fed. R. App. P. 28(a)(9)(A) (requiring an appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); see also Johnson v. Mullin, No. CIV-04-1602-L, 2006 WL 1804558 (W.D.Okla. June 28, 2006) (unpublished op.) (holding that a petitioner who is represented by counsel, should provide the Court with arguments based on Supreme Court authority to support his claims).

Although Respondent asks this Court to dispense with Petitioner's claim based on his failure to include argument or authority, in an abundance of caution, Respondent will respond to the merits of Petitioner's claim.  In <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984), the Supreme Court held that in order to obtain a new trial on an allegation that a juror failed to truthfully answer questions during voir dire, a party must demonstrate that the juror failed to honestly answer a material question and that a correct response would have provided a valid basis for a for-cause challenge.  This test is satisfied only by responses that are intentionally incorrect.  <u>Gonzales v. Thomas</u>, 99 F.3d 978, 984 (10th Cir. 1996).

In <u>United States v. McConnel</u>, 464 F.3d 1152, 1156 (10th Cir. 2006), potential jurors were asked if they or close relatives had "ever been involved in any court, in any criminal matter" in which they were a defendant, witness or victim.  One of the jurors failed to reveal that he had been charged with several felonies, which were dismissed at preliminary hearing.  <u>McConnel</u>, 464 F.3d at 1156.  At a hearing on the defendant's motion for new trial, the juror testified that he did not believe that he had been "involved in any court" because the charges were dismissed before trial.  <u>Id</u>.  The district judge found that the juror had a reasonable, albeit mistaken, belief that the question applied only to matters that went to trial.  <u>Id</u>.  The Tenth Circuit agreed.  <u>Id</u>. at 1157.

In the instant case, the trial court asked the potential jurors to

> listen to this question very closely.  Have any of you ever been
> in a court of law, under any circumstances?   Under any

54

> circumstances have you ever appeared in a court of law either as
> a witness, a plaintiff or as a defendant?  As a witness, a plaintiff
> or as a defendant.

Trial Tr. II(A) 91.  Mr. Whitmire responded that he had "traffic-related offenses."  Trial Tr.

II(A) 96.  When the court asked, "Anything (sic) other things?," Mr. Whitmire shook his

head.  Trial Tr. II(A) 96.

Petitioner attached to his post-conviction application a number of exhibits related to

Christopher W. Whitmire.[9]  These records indicate that Mr. Whitmire twice pled guilty to

felony DUI, twice pled guilty to misdemeanor DUI, was the defendant in a civil damages

case in which he defaulted, filed for bankruptcy, and was the subject of two temporary

protective orders which were subsequently dismissed for insufficient evidence.  Appendix

of Exhibits to App. for PC Relief, Exhibits 6-13.

The OCCA noted that Petitioner had provided no evidence to establish whether trial

or appellate counsel were aware of Mr. Whitmire's contacts with the judicial system.  PC

Opinion, page 7.  Pursuant to the presumption of competence found in Strickland, the OCCA

held that counsel could have strategic reasons for keeping a juror with a criminal record and

refused to find deficient performance based on unsupported allegations that trial and

appellate counsel were unaware of Mr. Whitmire's contacts with the legal system.  PC

---

[9]Although these exhibits refer to an individual or individuals with names identical or
similar to juror Whitmire's there is no proof that juror Whitmire is the person identified in
these exhibits.  Respondent assumes only for purposes of argument that juror Whitmire is the
person concerned in any of these or the other exhibits contained in Petitioner's appendix.

Opinion, page 8.  The OCCA found, and Petitioner conceded, that Mr. Whitmire's answer was true, as DUI is defined and punished in the Oklahoma Highway Safety Code, 47 O.S.§ 11-902.  PC Opinion, page 5.  Thus, Petitioner has failed to satisfy the first requirement of McDonough Power and establish that Mr. Whitmire gave an intentionally incorrect answer.

The OCCA further found it to be "debatable" whether Mr. Whitmire's failure to disclose his non-criminal cases was deliberately misleading or untruthful, as the only evidence that Mr. Whitmire ever "appeared in a court of law" is an appearance docket for one of the protective order cases.  PC Opinion, page 5.  However, even if Mr. Whitmire failed to truthfully answer questions related to these non-criminal matters, he would not have been subject to a challenge for cause if he had answered those questions truthfully.  See 38 O.S. 2001, § 28 (setting forth qualifications for and exemptions from jury service); 22 O.S. 2001, §§ 658-660 (setting forth the bases for challenges for cause).

Petitioner has failed to establish that trial counsel and appellate counsel were unaware of Mr. Whitmire's contacts with the legal system.  Accordingly, he cannot demonstrate that his attorneys failed to discover these contacts.  Further, Petitioner has failed to demonstrate that he was prejudiced by counsels' performances, as his claim fails the McDonough Power test.  The OCCA's decision is neither contrary to nor an unreasonable application of Strickland.  Accordingly, this claim for relief must be denied.

2. **Appellate counsel's failure to discover the potential testimony of Christopher Berry.**

As his second complaint against trial and appellate counsel, Petitioner claims that his attorneys were ineffective for failing to discover that former Oklahoma County Jail inmate Christopher Berry alleges that Christopher Jordan confessed to shooting Mr. Howell. This claim was addressed in proposition I, with Petitioner's claim that trial counsel was ineffective for failing to present the testimony of Mr. Littlejohn and Mr. Berry, and was shown to be without merit.

3. **Appellate counsel's failure to argue error in the trial court's failure to instruct the jury that the aggravating circumstances must outweigh the mitigating circumstances beyond a reasonable doubt.**

Petitioner next claims that appellate counsel was ineffective for failing to raise as error the trial court's failure to require the jurors to find that the aggravators outweighed the mitigators beyond a reasonable doubt. Petitioner raised this claim in his application for post-conviction relief. PC App., pages 47-54. The OCCA denied the Petitioner's ineffective assistance claim based on its prior rejection of claims that a jury should be required to find that aggravators outweigh mitigators beyond a reasonable doubt. PC Opinion, pages 13-14; see Rojem v. State, 130 P.3d 287, 299-300 (Okla. Crim. App. 2006).

Prior to Petitioner's direct appeal, the OCCA had already decided that jury instructions such as those requested by Petitioner are not required. See Harris v. State, 84 P.3d 731, 754-55 (Okla. Crim. App. 2004); Torres v. State, 58 P.3d 214, 216 (Okla. Crim. App. 2002). The OCCA continues to hold that position. Lay v. State, 179 P.3d 615, 623

(Okla. Crim. App. 2008); see also United States v. Barrett, 496 F.3d 1079, 1107-1108 (10th Cir. 2007) (holding that the Sixth Amendment does not require a jury finding that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt).  Appellate counsel cannot be found to be ineffective for failing to raise an meritless claim.  Miller, 354 F.3d at 1298.  Accordingly, Petitioner has failed to establish that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.

### GROUND SEVEN

**THE OCCA'S REFUSAL TO REVERSE PETITIONER'S SENTENCE BECAUSE THE TRIAL COURT REFUSED TO INSTRUCT THE JURY ON THE MEANING OF LIFE WITHOUT PAROLE WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF FEDERAL LAW.**

In his seventh ground for relief, Petitioner claims that he is entitled to the issuance of a writ of habeas corpus because the trial court denied his request that the jury be instructed as to the meaning of a sentence of life without parole.  Because the state court's determination is neither contrary to nor does it involve an unreasonable application of clearly established federal law, Petitioner's seventh ground for relief is without merit and must be denied.

Petitioner raised this claim on direct appeal.  DA Brief, pages 95-96.  The OCCA denied relief based upon its earlier holding in McCracken v. State, 887 P.2d 323, 334 (Okla. Crim. App. (1994) that the meaning of life without parole is self-explanatory when the jury also has the option of giving a life sentence.  Jones, 128 P.3d at 551, n. 11.

58

The Tenth Circuit has held that Oklahoma's provision of three options to the jury--death, life imprisonment without the possibility of parole and life imprisonment--fulfills the requirement of Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) that the jury be informed when a defendant is parole ineligible.  Smith v. Mullin, 379 F.3d 919, 938 (10th Cir. 2004).  The Tenth Circuit has further held that, under Simmons, a defendant's due process rights are violated only if: (1) the prosecution seeks the death penalty; (2) the prosecution places the defendant's future dangerousness at issue; (3) the jury asks for clarification of the meaning of life imprisonment; and (4) the judge's response threatens to cause the jury to perceive a false choice between death and incarceration for a limited time.  Mollett v. Mullin, 348 F.3d 902, 914 (10th Cir. 2003).

Petitioner can satisfy only the first two Mollett requirements.  Petitioner's jury was instructed that they could sentence Petitioner to "death, or imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole." O.R. VIII, page 1408.  The availability of the option of life with the possibility of parole clearly informed the jury that a sentence of life without the possibility of parole is just what is purports to be.  The jury did not evidence any confusion regarding their options.  As neither Oklahoma's sentencing scheme, nor the instructions of the trial judge in this case, created a false choice for the jury which implied that if they did not sentence Petitioner to death he might one day be released from prison, the OCCA's decision is not contrary to or an unreasonable

application of clearly established federal law. Thus, Petitioner's seventh ground for relief must be denied.

## GROUND EIGHT

### THE OCCA'S AFFIRMANCE OF OKLAHOMA'S CONTINUING THREAT AGGRAVATOR WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.

Petitioner's eighth ground for relief is a claim that Oklahoma's continuing threat aggravating circumstance is unconstitutionally overbroad. The OCCA's decision is consistent with the cases of the Supreme Court and previous challenges to the aggravator have been rejected by the Tenth Circuit. Accordingly, the OCCA's decision was not contrary to or an unreasonable application of clearly established federal law. As such, Petitioner's eighth ground for relief must be denied.

On direct appeal, Petitioner challenged the continuing threat aggravator on constitutional grounds. DA Brief, pages 82-84. However, Petitioner's challenges related to the alleged vagueness of the aggravator and to the use of unadjudicated offense in support of the aggravator. DA Brief, pages 82-84. Petitioner explicitly recognized that trial counsel had filed an overbreadth challenge before trial. DA Brief, page 82. However, Petitioner did not ask the OCCA to reconsider that challenge. DA Brief, pages 82-85.

Petitioner's post-conviction application did not challenge the continuing threat aggravating circumstance. Accordingly, Petitioner's overbreadth challenge is unexhausted.

60

Respondent incorporates the arguments and authorities in ground I and contends that this Court should treat Petitioner's claim as procedurally barred because any attempt Petitioner might make to raise the claim now before the OCCA would not be considered by that court.

Alternatively, this Court may also easily reject this claim on its merits. See Neill v. Gibson, 278 F.3d 1044, 1063 (10th Cir. 2001) (rejecting a claim on the merits, in spite of the fact that the OCCA had found the claim to be procedurally barred, because the merits determination was easier and more succinct). In Wilson v. Sirmons, 536 F.3d 1064, 1109 (10th Cir. 2008), the petitioner claimed that Oklahoma's continuing threat aggravator is overbroad because it does not narrow the class of murderers who are eligible for the death penalty. The Tenth Circuit held that the claim was foreclosed by a number of prior Circuit decisions upholding the constitutionality of the aggravator. Wilson, at 1109. As in Wilson, Petitioner offers no reason to deviate from that precedent. See id. Accordingly, this claim must be denied.

## **CONCLUSION**

Based on the above and foregoing law and reasoning, federal habeas corpus relief is unwarranted. Petitioner's petition for federal habeas corpus relief should therefore be denied in its entirety by this Court.

61

Respectfully submitted,

**W.A. DREW EDMONDSON**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/Jennifer L. Strickland**
**JENNIFER L. STRICKLAND, OBA# 20546**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921      FAX (405) 522-4534
Service email: fhc.docket@oag.state.ok.us
**ATTORNEYS FOR RESPONDENT**

<u>**CERTIFICATE OF SERVICE**</u>

**X**      I hereby certify that on this 18th day of December 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Mark Barrett
P.O. Box 896
Norman, Oklahoma 73070
barrettlawoffice@gmail.com

s/Jennifer L. Strickland
JENNIFER L. STRICKLAND