IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JULIUS JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-1290-D |
| | ) | |
| ANITA TRAMMELL, Warden,[1] | ) | |
| Oklahoma State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner, a state prisoner currently facing execution of a sentence of death, appears

with counsel and petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

challenging his convictions in the District Court of Oklahoma County, Case No. CF-1999-

4373, of one count of first-degree felony murder, one count of felonious possession of a

firearm, and one count of conspiracy to commit a felony.  Respondent has responded to

Petitioner's *Petition for a Writ of Habeas Corpus* (hereinafter "Petition"),[2] and Petitioner has

replied.  The State court record has been supplied.[3]

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Anita Trammell is hereby substituted for Marty Sirmons as Respondent in this case.

[2] References to the parties' pleadings shall be as follows: Petitioner's *Petition for a Writ of Habeas Corpus* shall be cited as (Pet. at __.); Respondent's *Response in Opposition to Petition for Writ of Habeas Corpus* shall be cited as (Resp. at __.); and, Petitioner's *Reply Regarding Petition for Writ of Habeas Corpus* shall be cited as (Reply at __.).

[3] The trial court's original record shall be cited as (O.R. at __.).  The trial transcript shall be cited as (Tr., Vol. ___, p. __.).

## PROCEDURAL HISTORY

Petitioner was convicted by a jury in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-1999-4373, of one count of first-degree felony murder for the death of Paul Howell, one count of felonious possession of a firearm, and one count of conspiracy to commit a felony.  For the crime of first-degree felony murder, the jury recommended the imposition of a sentence of death, finding the existence of two aggravating circumstances: (1) that the defendant knowingly created a great risk of death to more than one person; and (2) that there exists the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.  Petitioner was also sentenced to fifteen years imprisonment on the felonious possession of a firearm count and twenty-five years imprisonment on the conspiracy count.

Petitioner appealed his convictions and his sentences to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA").  The OCCA affirmed Petitioner's convictions and sentence of death in a published opinion dated January 27, 2006. Jones v. State, 128 P.3d 521 (Okla. Crim. App. 2006).  The OCCA granted Petitioner's petition for rehearing, but denied recall of the mandate. Jones v. State, 132 P.3d 1 (Okla. Crim. App. 2006).  Certiorari was denied on October 10, 2006. Jones v. Oklahoma, 127 S.Ct. 404 (2006).  Petitioner filed an Application for Post-Conviction Relief which was denied by the OCCA in an unpublished opinion. Jones v. State, No. PCD-2002-630 (Okla. Crim. App. Nov. 5, 2007).

## FACTUAL BACKGROUND

Under 28 U.S.C. § 2254(e), when a federal district court addresses "an application for

a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). For the purposes of consideration of the present Petition, the Court provides and relies upon the following synopsis from the OCCA's opinion summarizing the evidence presented at Petitioner's trial. Following review of the record, trial transcripts, and the admitted exhibits, the Court finds this summary by the OCCA to be adequate and accurate. The Court therefore adopts the following summary of the facts as its own:

> On Wednesday, July 28, 1999, Paul Howell was fatally shot in the driveway of his parents' Edmond home. Howell, his sister, Megan Tobey, and Howell's two young daughters had just returned from a shopping trip in Howell's Chevrolet Suburban. Howell pulled into the driveway and turned the engine off. As Tobey exited from the front passenger side, she heard a gunshot. Tobey turned to see her brother slumped over the driver's seat, and a young black male, wearing a white T-shirt, a stocking cap on his head, and bandana over his face, demanding the keys to the vehicle. Tobey rushed to get herself and Howell's daughters out of the Suburban. As Tobey escorted the girls through the carport, she heard someone yelling at her to stop, and then another gunshot. Tobey got the girls inside and summoned for help. Howell's parents ran outside to find their son lying on the driveway. His vehicle was gone. Howell died a few hours later from a single gunshot wound to the head.

> Two days after the shooting, Oklahoma City police found Howell's Suburban parked near a convenience store on the south side of town. Detectives canvassed the neighborhood and spoke with Kermit Lottie, who owned a local garage. Lottie told detectives that Ladell King, and another man he did not know, had tried to sell the vehicle to him the day before. Lottie realized at the time that the vehicle matched the description given in news reports about the Howell carjacking. Ladell King, in turn, told police that he had agreed to help Christopher Jordan and Jones find a buyer for a stolen vehicle. On the night of the shooting, Jordan came to King's apartment driving a Cutlass; Jones arrived a short time later, wearing a white T-shirt, a black stocking cap, and a red bandana, and driving the Suburban. King told police that Jones could be found at his parents' Oklahoma City home.

Police then drove to Jones's parents' home, called a telephone number supplied by King, and spoke to someone who identified himself as Julius Jones. Jones initially agreed to come out and speak to police, but changed his mind. Police made several attempts to re-establish telephone contact; eventually a female answered and claimed Jones was not there. While some officers maintained surveillance at the home, others sought and obtained warrants to arrest Jones and search his parents' home for evidence. Police found a .25–caliber handgun, wrapped in a red bandana, secreted in the attic through a hole in a bedroom ceiling and found papers addressed to Jones in the bedroom. Police also found a loaded, .25–caliber magazine, hidden inside a wall-mounted door-chime housing. Further investigation revealed that the bullet removed from Howell's head, and a bullet shot into the dashboard of the Suburban, were fired from the handgun found in the attic of the Jones home.

Christopher Jordan was arrested on the evening of July 30. Jones, who managed to escape his parents' home before police had secured it, was arrested at a friend's apartment on the morning of July 31. The two men were charged conjointly with conspiracy to commit a felony, and with the murder of Howell. Jordan agreed to testify against Jones as part of a plea agreement. At trial, Jordan testified that the two men had planned to steal a Chevrolet Suburban and sell it; that they followed Howell's vehicle for some time with the intent to rob Howell of it; that once Howell pulled into the driveway, Jordan stayed in their vehicle while Jones, armed with a handgun, approached the Suburban on foot; that after the robbery-shooting, Jones drove the Suburban away and told Jordan to follow him; and that Jones subsequently claimed his gun had discharged accidentally during the robbery.

Jones, 128 P.3d at 532-33.

Additional facts and testimony were submitted to the jury at trial but are not contained in the OCCA's summary. Additional facts necessary for a determination of Petitioner's claims will be set forth in detail throughout this Opinion where applicable.

## PETITIONER'S CLAIMS FOR RELIEF

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter

"AEDPA"),  in order to obtain federal habeas relief once a State court has adjudicated a

particular claim on the merits, Petitioner must demonstrate that the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).

The Supreme Court has defined "contrary to" as a State court decision that is

"substantially different from the relevant precedent of this Court." Williams v. Taylor, 529

U.S. 362, 405 (2000) (O'Connor, J., concurring and delivering the opinion of the Court).  A

decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that

contradicts the governing law set forth in [Supreme Court] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of this Court and

nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405-06.

The "unreasonable application" prong comes into play when "the state court identifies the

correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the

facts of the particular state prisoner's case" or "unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably

refuses to extend that principle to a new context where it should apply." Id. at 407.  In

ascertaining clearly established federal law, this Court must look to "the holdings, as opposed

to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decisions." Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004) (quoting Williams, 529

at 412.

The "AEDPA's purpose [is] to further the principles of comity, finality, and federalism.  There is no doubt Congress intended AEDPA to advance these doctrines." Williams v. Taylor, 529 U.S. 420, 436 (2000).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  The deference embodied in Section 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011)(citation omitted).

## GROUNDS FOR RELIEF

Ground 1:    Ineffective Assistance of Trial Counsel Regarding Failure to Present Evidence and Failure to Effectively Cross-Examine Witnesses.

In his first ground for relief, Petitioner complains about the effectiveness of his trial counsel.  Petitioner faults his trial counsel for failing to (1) show the jury that Petitioner's hair was too short for him to be the one identified by Megan Tobey as the person who shot Mr. Howell; (2) argue that Mr. King, and not Petitioner, was most likely the one seen earlier in the day with Mr. Jordan; (3) present evidence of Mr. Jordan's confessions to the crime; and (4) demonstrate to the jury Mr. Jordan's pattern of falsehoods.  Petitioner asserts that all of these complaints were presented to the OCCA either on direct appeal or in his post-conviction relief application. (Pet. at 23-24.) Respondent argues that only the third complaint

is exhausted and that the OCCA's disposition of the third complaint is neither contrary to nor an unreasonable application of Supreme Court law.  As to the remaining complaints, Respondent argues for the application of the doctrine of anticipatory procedural bar.  In his Reply, Petitioner, with reference to the Rule 3.11 Motion presented by his appellate counsel on direct appeal, has taken issue with Respondent's characterization of his complaints as unexhausted.

On direct appeal, appellate counsel presented numerous claims regarding trial counsel's ineffectiveness.  Brief of Appellant, Case No. D-2002-534, pp. 39-57.  In support of the claim set forth in direct appeal Proposition VIII, appellate counsel also filed 39 supplementary materials in an extensive Rule 3.11 Motion.  Completely absent from his direct appeal brief is any reference to trial counsel's actions (or inactions) relating to the length of Petitioner's hair and who, besides Petitioner, may have been with Mr. Jordan on the day Mr. Howell was murdered (Petitioner's first and second complaints raised here).  Relative to Petitioner's third complaint, appellate counsel argued on direct appeal that trial counsel was ineffective for failing to present the testimony of Emmanuel Littlejohn concerning statements Mr. Jordan allegedly made to him about the murder of Mr. Howell.  Id. at 41.  In Petitioner's application for post-conviction relief, post-conviction counsel expanded the claim, arguing that trial counsel was ineffective for not presenting the testimony of Christopher Berry, who, like Mr. Littlejohn, allegedly heard Mr. Jordan make statements about the murder of Mr. Howell.  Original Application for Post-Conviction Relief,

Case No. PCD-2002-630, pp. 27-31.[4]  Relative to his fourth complaint, appellate counsel

argued on direct appeal that trial counsel was ineffective for failing to "effectively and fully"

impeach Mr. Jordan with prior inconsistent statements.  Appellate counsel cited inconsistent

preliminary hearing testimony, and also noted that trial counsel did not interview Mr. Jordan

before trial.  Appellate counsel additionally argued that

> trial counsel failed to methodically and exhaustively go through Mr. Jordan's
> plea agreement, his prior inconsistent statements to Mr. Littlejohn and in his
> plea negotiation proffer dated September 12, 2000, his motivation for
> testifying falsely to avoid the death penalty, his motivation to obtain and retain
> the lenient treatment set forth in his plea agreement, his relation with
> Mr. King, and his subjective belief, whether true or untrue, that he would serve
> not more than 15 years on a life sentence with all but 30 years suspended.

Brief of Appellant, pp. 45-46 (citations omitted).

Having thoroughly reviewed the state court record, the Court agrees with Respondent

that Petitioner's first and second complaints are unexhausted.  Petitioner's citations to the

direct appeal record do not show that these complaints were raised therein.[5]  If Petitioner

---

[4]  Relative to this claim, Petitioner also claimed in his post-conviction application that his
appellate counsel was ineffective for failing to raise this claim of trial counsel ineffectiveness.
Petitioner has presented the appellate counsel portion of this claim in his Ground Six.

[5] The only citations made by Petitioner (Reply at 5-6) which have any relation to his first and
second complaints are very broad, general statements about trial counsel's alleged failures.  See
Rule 3.11 Motion, p. 2 (As an introduction to the list of supplementary materials, reference to "a
failure by trial counsel to effectively use all available evidence and/or to adequately investigate to
identify evidence which was available and should have been presented or otherwise utilized at trial. .
. .") and p. 4 ("Trial counsel was ineffective in failing to fully and fairly subject the prosecution's
evidence at trial to the crucible of meaningful adversarial testing through cross-examination.").
These generalized statements, which are completely devoid of the factual bases of Petitioner's first
and second complaints, in no way alert the OCCA to Petitioner's claims regarding trial counsel's
actions relating to the length of Petitioner's hair and who, besides Petitioner, may have been with
Mr. Jordan on the day Mr. Howell was murdered.  See Bland v. Sirmons, 459 F.3d 999, 1011 (10th
Cir. 2006) (citing Picard v Connor, 404 U.S. 270, 275 (1971) (claim is unexhausted when it has not

were to return to State court with these claims now, it is clear, as Respondent alleges, that they would be procedurally barred due to Petitioner's failure to present them in his initial post-conviction application.  See Anderson v. Sirmons, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.").

The only way for Petitioner to circumvent this anticipatory procedural bar is by making one of two showings: he may either demonstrate "cause and prejudice" for his failure to raise the claims in his initial application for post-conviction relief, or he may show that failure to review his claims will result in a "fundamental miscarriage of justice."  Id. at 1240. Petitioner has not alleged cause and prejudice, but has attempted to satisfy the fundamental miscarriage of justice exception by asserting his innocence. (Reply at 6-7.)  The fundamental miscarriage of justice exception addresses those rare instances "where the State has convicted the wrong person of the crime." Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  Thus, to meet the exception, a petitioner must make "a colorable showing of factual innocence." Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000).  This requires Petitioner to "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).  Petitioner has failed to demonstrate facts to satisfy this demanding burden.  The length of Petitioner's hair compared to Mr. Jordan's is not a persuasive showing of actual innocence.  Further, the identity of someone

been "fairly presented" to the state courts)).

possibly seen earlier in the day with Mr. Jordan also lacks persuasiveness as to the identity of the shooter and his accomplice in a different location hours after the crime. These facts, even if accepted, do not persuasively show Petitioner is actually innocent of the crimes in light of the amount of evidence pointing to his guilt and, thus, do not justify a circumvention of an anticipatory procedural bar to his first and second complaints.

Regarding Petitioner's fourth complaint, the Court disagrees with Respondent that this complaint is unexhausted. While Petitioner's fourth complaint does not mirror the claim raised by appellate counsel on direct appeal regarding the impeachment of Mr. Jordan, it is in essence the same claim. On direct appeal, appellate counsel argued that trial counsel was ineffective in his cross-examination of Mr. Jordan in that he did not fully and effectively discredit him as he could have from available evidence. Here, although Petitioner cites to some additional available evidence which might have been used to discredit Mr. Jordan, the underlying claim is the same.

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, Petitioner must first show that his counsel's representation fell below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688 (1984). In so doing, Petitioner must overcome the "strong presumption" that his counsel's conduct fell within the "wide range of reasonable professional assistance" that "'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). He must, in other words, overcome the presumption that his counsel's conduct was constitutionally effective. United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993). A

claim of ineffective assistance "must be reviewed from the perspective of counsel at the time," Porter v. Singletary, 14 F.3d 554, 558 (11th Cir. 1994), and, therefore, may not be predicated on "'the distorting effects of hindsight.'" Parks v. Brown, 840 F.2d 1496, 1510 (10th Cir. 1987) (quoting Strickland, 466 U.S. at 689).

If constitutionally deficient performance is shown, Petitioner must then demonstrate that "there is a 'reasonable probability' the outcome would have been different had those errors not occurred." Haddock, 12 F.3d at 955 (citing Strickland, 466 U.S. at 688, 694, and Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993)).  In the specific context of a challenge to a death sentence, the prejudice component of Strickland focuses on whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695; quoted in Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992).  Petitioner bears the burden of establishing both that the alleged deficiencies unreasonably fell beneath prevailing norms of professional conduct and that such deficient performance prejudiced his defense.  Strickland, 466 U.S. at 687; Yarrington v. Davies, 992 F.2d 1077, 1079 (10th Cir. 1993).  In essence, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.  "Counsel's performance must be 'completely unreasonable' to be constitutionally ineffective, 'not merely wrong.'" Welch v. Workman, 639 F.3d 980, 1011 (10th Cir. 2011) (quoting Hoxsie v.Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997)).  "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky,

11

559 U.S. 356, __, 130 S. Ct. 1473, 1485 (2010).

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," [<u>Strickland</u>] at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles</u>, 556 U.S. at ___, 129 S.Ct. at 1420.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.

<u>Harrington v. Richter</u>, 562 U.S. __, __, 131 S. Ct. 770, 788 (2011).

In addressing the merits of Petitioner's fourth complaint, the OCCA held as follows:

> Next, Jones claims that trial counsel should have cross-examined Jordan more thoroughly, in both the guilt and punishment stages of trial, with the aim of showing the jury that Jordan was slanting his testimony in hopes of bettering his own situation. Counsel did cross-examine Jordan at length, pointing out inconsistencies in his story and otherwise attacking his credibility. Jones's arguments on appeal are nothing more than complaints about exactly how that impeachment should have been accomplished. Jordan admitted in guilt-stage cross-examination that many of the details he had previously given to police and his own attorney were false; Jones's defense counsel methodically went over many of these untruths. Jordan also admitted, on cross-examination, that he had previously lied about his involvement in this case to help himself out. In the punishment stage, trial counsel cross-examined Jordan again about his plea negotiations, and how he stood to gain from helping the State convict Jones. The fact that counsel did not ask every

> question Jones is now able to formulate on appeal is not proof of deficient
> performance.

Jones, 128 P.3d at 546-47.[6]  Petitioner has failed to show that this determination by the

OCCA is contrary to, or an unreasonable application of, clearly established Supreme Court

precedent.  Accordingly, relief is denied as to this claim.

Petitioner's third complaint was aptly addressed by the OCCA on both direct appeal

and on consideration of his post-conviction application.  On direct appeal, the OCCA held

as follows:

> Jones goes on to attack trial counsel's decision not to present the
> testimony of Emmanuel Littlejohn. A multiple felon and convicted murderer,
> Littlejohn briefly shared a county jail cell with co-defendant Jordan while
> awaiting capital resentencing in his own first-degree murder case. Littlejohn
> told defense investigators that Jordan admitted he was falsely throwing blame
> on Jones, that Jordan said Jones was not involved in the Howell murder at all,
> and that Jordan had even gone so far as to hide the murder weapon and other
> incriminating evidence in the Joneses' home himself. The fact that defense
> counsel actually did investigate Littlejohn's claim before trial reduces Jones's
> argument to one over trial strategy which, as Strickland instructs, is much
> more difficult to attack. Littlejohn's criminal history presented obvious
> credibility problems. While he had nothing to gain from testifying on Jones's
> behalf, he had little to lose by perjuring himself with claims that were
> impossible to corroborate. Moreover, the image of Jordan planting evidence
> in the attic of the Jones family home, without their knowledge, might have
> been somewhat difficult for the jury to believe. We find nothing unreasonable
> about counsel's decision to forgo Littlejohn's assistance.

Jones, 128 P.3d at 546.  On consideration of Petitioner's post-conviction application, the

---

[6] On direct appeal, Petitioner challenged trial counsel's cross-examination of Mr. Jordan in
both stages of his bifurcated trial.  As shown by this citation to the OCCA's opinion, the OCCA
addressed both aspects of the claim in a single disposition. In his petition for habeas relief, however,
Petitioner only challenges trial counsel's performance in the guilt stage.

OCCA held as follows:

> Next, Petitioner claims trial counsel was ineffective for failing to investigate and present [a witness] at trial, and that appellate counsel was ineffective for not recognizing and advancing this claim on direct appeal. Specifically, Petitioner claims that the testimony of Christopher Berry . . . could have made a difference in the outcome of the trial.  At the time of Petitioner's trial, Berry was being held in the Oklahoma County Jail on a charge of Child Abuse Murder.  He was later convicted of that charge and sentenced to life in prison without the possibility of parole.  Berry claims, by affidavit, that he overheard Petitioner's co-defendant, Christopher Jordan, boasting that he, not Petitioner, was the triggerman in the homicide with which they were jointly charged.

> Petitioner made a similar claim on direct appeal, alleging trial counsel was ineffective for not presenting the testimony of another jail inmate, Emmanuel Littlejohn, who also allegedly heard Jordan boast about being the triggerman.  We rejected that claim, because the inmate's credibility was suspect and the details of the account were specious.  Berry suffers from the same credibility problems that Littlejohn did.  Nor do we agree with Petitioner's argument that Berry's claim necessarily "corroborates" Littlejohn's.  Berry's affidavit suggests that Jordan admitted Petitioner was involved in the murder, while according to Littlejohn, Jordan denied that Petitioner had any involvement.  Taken together, these inmates' claims show only one thing: that Christopher Jordan changed his story to suit his own needs.  Yet this much was already clear to the jury, through trial counsel's extensive cross-examination of Jordan, who testified against Petitioner at trial.

Jones,  No. PCD-2002-630, slip op. at 10-11 (citations to the direct appeal opinion omitted).

Once again, Petitioner has failed to show that the OCCA rendered a decision which is contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly, relief is denied as to this claim.

In sum, the Court finds that Petitioner is not entitled to relief on Ground One.  For the reasons set forth above, Petitioner's first and second complaints are procedurally barred and his third and fourth complaints are denied.

Ground 2:      Ineffective Assistance of Trial Counsel Regarding Suppression of Evidence.

In his second ground for relief, Petitioner makes an additional claim regarding his trial counsel's alleged ineffectiveness.   He claims that because trial counsel failed to make necessary requests and objections which would have shown that a search warrant contained materially false information, counsel was ineffective and habeas relief is warranted.[7] Respondent responds that the OCCA's determination that counsel was not ineffective for failing to move to suppress the evidence pursuant to Franks v. Delaware, 438 U.S. 154 (1978), is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court.

The facts leading up to the search of Petitioner's home and the underlying basis for his claim are best summarized by the OCCA's thorough analysis and determination of Petitioner's claim on direct appeal:

> In Proposition One, Jones claims that evidence seized from his parents' home pursuant to a search warrant was improperly admitted.   On July 30, 1999, police officers, believing Jones was present, surrounded Jones's parents' home and attempted to make contact with Jones by telephone.   An officer spoke with an individual who identified himself as Jones, and some time later, Jones's parents, sister and brother came out of the house.   Jones's father told police that Jones was not in the house and invited the police inside to look for him.   The officers informed Jones's parents they would wait on a search warrant due to safety concerns.   Thereafter, officers obtained a search warrant. A police tactical team entered the house around 9:30 p.m. and declared it secure by 10:00 p.m.   Jones was not inside.   After that, the search team entered the house and conducted the search.

---

[7] The search warrant ultimately lead to the discovery of the gun used in the shooting and some of its ammunition.

The search yielded items seen by the victim's sister during the crime, clothing items that King saw Jones wearing thirty minutes after the crime, a semi-automatic, chrome-finished pistol consistent with a gun King said Jones habitually carried, a red bandana, the pistol's magazine and bullets, a dark green and a black stocking cap, and a white tee shirt with black trim.

Jones filed a motion to suppress all the evidence prior to trial, arguing the affidavit for search warrant lacked probable cause, night-time authorization was improper under 22 O.S.Supp.1999, § 1230, and the night-time search was improper. The trial court denied the motion to suppress. At trial, Jones objected to the admission of the evidence on the basis that the night-time search was not supported by sufficient facts.

Jones claims the information in the affidavit was insufficient to ensure the issuing magistrate had a substantial basis for concluding that probable cause existed. He complains that the affidavit did not contain a factual basis establishing that evidence would be found in Jones's parents' residence and did not include any information establishing the reliability of the statement from, or the veracity of, Ladell King. Jones also claims his trial counsel was ineffective for failing to object to the search warrant on the basis that the affidavit contained deliberate false and/or misleading information. An argument raised in support of a motion to suppress which is not raised at trial is waived. Young v. State, 1998 OK CR 62, ¶ 22, 992 P.2d 332, 339. Therefore, we review Jones's claim that the affidavit was insufficient to establish probable cause for plain error. Cheatham v. State, 1995 OK CR 32, ¶ 48, 900 P.2d 414, 427.

We give a magistrate's finding of probable cause great deference. Mollett v. State, 1997 OK CR 28, ¶ 14, 939 P.2d 1, 7. The residence of a person suspected of a crime is a natural place for concealing evidence of that crime. Id., 1997 OK CR 28, ¶ 15, 939 P.2d at 7. Further, facts to establish the reliability of information obtained from King was not necessary, because King was named in the affidavit as the giver of the information. Caffey v. State, 1983 OK CR 39, ¶ 11, 661 P.2d 897, 900. Upon review, we find the information set forth in the affidavit sufficient to support the magistrate's finding of probable cause and issuance of the search warrant.

We also find trial counsel was not ineffective for failing to object and request a Franks hearing to determine whether the police knowingly or with reckless disregard for the truth included false or misleading information in the affidavit or omitted critical information. Jones submits the police intentionally

16

omitted critical information from the affidavit – that the police knew Jones had left the residence prior to obtaining the search warrant. The record shows the police had Jones's residence surrounded and attempted contact with Jones, whom they believed was inside, at the time other officers were preparing the affidavit. Around 4:30 p.m., Jones's father told police Jones was not inside. This information was not included in the affidavit which was presented to the magistrate around 7:00 p.m.

In Franks v. Delaware, the Supreme Court held that an affidavit supporting a factually sufficient search warrant might be attacked upon allegations that the affidavit contained intentional lies or reckless disregard for the truth. If the inaccuracies are removed from consideration and there remains in the affidavit sufficient allegations to support a finding of probable cause, the inaccuracies are irrelevant. Id., 438 U.S. 154, 171, 98 S.Ct. at 2684, 57 L.Ed.2d 667. To determine whether the inaccuracies are irrelevant, we ask whether the warrant would have been issued if the judge had been given accurate information. Wackerly, 2000 OK CR 15, ¶ 13, 12 P.3d at 9. We find, even had the affidavit included Jones's parents' claim that Jones had left the home, a substantial basis for the issuance of the warrant would have existed and the warrant would have properly been issued.

The magistrate had a substantial basis for concluding that probable cause existed. No plain error occurred. Further, trial counsel's failure to attack the sufficiency of the affidavit at trial and request a Franks hearing does not constitute deficient performance, as such an objection would have failed. Phillips v. State, 1999 OK CR 38, ¶ 104, 989 P.2d 1017, 1044.

Jones, 128 P.3d at 535-37 (footnotes omitted).

As stated previously, Petitioner bears the burden when claiming ineffective assistance of counsel of demonstrating that the OCCA's determination was unreasonable. He must establish both that the alleged deficiencies unreasonably fell beneath prevailing norms of professional conduct and that such deficient performance prejudiced his defense. Strickland, 466 U.S. at 686. In the case of a claim of ineffectiveness for failing to present a Fourth Amendment claim, Petitioner's burden increases even more:

17

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Petitioner claims that at the time law enforcement were obtaining the search warrant, the police had "uncontradicted information" he was not at the residence. In support of this allegation, Petitioner cites to his parents' testimony at the suppression hearing.[8] His parents testified they looked throughout the house and then told law enforcement that Petitioner was not at their residence. Petitioner further claims the State later agreed in its Response to Defendant's Motion to Suppress (O.R. at 213) that the officers knew the house was unoccupied beginning at or about 4:00 p.m. on July 30. (Pet. at 25.)[9]

Petitioner has not demonstrated the OCCA's determination to be unreasonable, nor has he shown that law enforcement made false statements in the affidavit. In Franks, the

---

[8] This is not an instance where trial counsel completely failed to attempt to suppress the evidence obtained pursuant to the search warrant. Prior to trial, trial counsel moved to suppress the evidence on the grounds that the search was improperly conducted on a residence during the night and that the magistrate judge did not make and articulate specific findings necessary to authorize a night-time search. Trial counsel specifically agreed with the prosecutor, however, that the hearing was not a Franks hearing. (Tr., 8/11/2000 and 8/15/2000, p. 25.)

[9] The State objects to Petitioner's characterization of its Response. One of the State's arguments against the claim that the warrant was improperly executed at night was that the statute requiring warrants on occupied dwellings to be served during the day was not violated because the house was not occupied when the warrant was served. Respondent states that the Response did not contain an admission the police knew Petitioner was not there. Instead, in hindsight, the prosecutors knew at the time of the filing of the Response that Petitioner had fled the house and that the search was actually conducted on an unoccupied dwelling.

Supreme Court held that a defendant is entitled to a hearing regarding a warrant's sufficiency to sustain probable cause if allegations of deliberate falsehood or of reckless disregard for the truth on the part of an affiant are specifically identified in the affidavit and accompanied by a statement of supporting reasons.  If these requirements are met, and when the allegedly false or reckless material is set to one side there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  Alternatively, if the remaining content is insufficient, the defendant is entitled to a hearing.  Franks, 438 U.S. at 171-72.[10]  "Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."  Id. at 171.

The testimony and arguments offered in support of his claim were considered by the State court, along with Detective Flowers' testimony at the suppression hearing and at the trial.  Detective Flowers testified at trial that when he first arrived at Petitioner's parents' home he called Petitioner's phone number and spoke with someone who identified himself as Petitioner.  Detective Flowers told Petitioner the house was surrounded and requested that he come outside.  The front door opened and someone looked out, but then the door was shut.  Despite later being told otherwise by Petitioner's parents, Detective Flowers was concerned that Petitioner was still in the house.  According to his testimony, Detective Flowers did not know Petitioner was not in the house until after the tactical team entered the home and

---

[10]  "Whether he will prevail at that hearing is, of course, another issue."  Id.

completed their sweep of the premises. (Tr., Vol. VII, pp. 177-88, 206.)[11] Detective Flowers'

trial testimony was consistent with the concerns he expressed in his testimony at the

suppression hearing – concerns that at the time, Petitioner was armed and barricaded in the

house. (Tr., 8/11/2000 and 8/15/2000, pp. 164-65.)

Petitioner has also failed to demonstrate the OCCA's determination was unreasonable

that, even had the affidavit included Petitioner's parents' statements he had left the home, a

substantial basis for the warrant would have existed and the warrant would have been

properly issued.  Further, as determined by the OCCA, since an objection based on <u>Franks</u>

to the affidavit would have failed, trial counsel's failure to request such a hearing does not

constitute deficient performance.   As Petitioner has failed to demonstrate the OCCA's

determination is unreasonable as to both his Fourth Amendment claim and his Sixth

Amendment claim, his second ground for relief is denied in its entirety.

<u>Ground 3:</u>      <u>Prosecutorial Misconduct</u>.

In his third ground for relief, Petitioner claims that during closing arguments the

prosecutor improperly gave her personal opinion of his guilt, vouched for the credibility of

witnesses, misstated testimony, engaged in speculation, and started a demonstration as to

how the shooting occurred by pointing her finger at a juror's head.[12]  He claims these and

---

[11]   Indeed, it seems illogical that law enforcement would utilize a tactical team and a
negotiator if they knew the house was unoccupied.

[12]  Petitioner's claim regarding the prosecutor's demonstration with a juror is included only
in the caption to his ground for relief.  It was neither identified nor argued in the body of his claim.

other instances of prosecutorial misconduct deprived him of his right to due process of law

under the Eighth and Fourteenth Amendments. (Pet. at 28-30)[13]

Petitioner raised these claims of prosecutorial misconduct on direct appeal.  The

OCCA held:

> In Proposition Eleven, Jones argues various trial errors and prosecutorial misconduct deprived him of a fair trial and a reliable sentencing proceeding and warrants a new trial or modification of his sentences.  Jones's complaints include: improper display of emotion, improper personal opinion, misstating evidence, misleading comments, arguing guilt by association, speculation, going outside record, inflammatory demonstration, arguing that Jones committed unadjudicated crimes without a reliable basis, evoking emotional response, misstatement of applicable law and improper argument.

> Many of the errors claimed by Jones were not objected to at trial; therefore, we review those claims for plain error. Banks v. State, 2002 OK CR 9, ¶ 41, 43 P.3d 390, 401.  After carefully reviewing the arguments and record, we find no plain error.  Some of the errors claimed by Jones were objected to at trial and the objections were sustained by the trial court, most with instructions or admonishments, which cured any error that may have occurred. Slaughter, 1997 OK CR 78, ¶ 110, 950 P.2d at 869.

> Some of the instances Jones complains of were proper comments on the evidence, reasonable inferences based on the evidence, or evidentiary rulings by the trial court that were not an abuse of discretion. Bland v. State, 2000 OK CR 11 ¶ 97, 4 P.3d 702, 728.  The jury was properly instructed that it was the finder of fact and that attorney argument was not evidence.  Juries are presumed to follow their instructions. Turrentine v. State, 1998 OK CR 33, ¶ 26, 965 P.2d 955, 968.  The comments were the typical sort of comments made during the normal course of closing argument and, as such, these instances of alleged improper comment fall within the broad parameters of effective advocacy and do not constitute error. Matthews v. State, 2002 OK CR 16, ¶ 38, 45 P.3d 907, 920.

> We address one complaint concerning an inflammatory demonstration

---

[13]  Petitioner does not identify the "other instances" he refers to in his claim for relief.

by the prosecutor.   During sentencing stage final closing argument, the prosecutor, in describing how the victim was killed, stated Jones held the gun to Howell's head while simultaneously pointing her finger at a juror's head, as if demonstrating a gun pointed towards the juror's head.   Trial counsel objected, but the prosecutor continued the demonstration using co-counsel as the victim.

This Court has previously upheld demonstrations that are based on the evidence presented at trial and not theatrical demonstrations. Gilbert v. State, 1997 OK CR 71, ¶ 94–95, 951 P.2d 98, 121.   This demonstration was an attempt to illustrate the shooting based upon the evidence presented at trial; however, the conduct involving a juror cannot be condoned.   Still, we find it was not so egregious as to elicit an emotional response rather than a rational judgment from the juror or the jury and it was not so prejudicial as to deprive Jones of a fair sentencing proceeding.

"Allegations of prosecutorial misconduct will not cause a reversal of judgment or modification of sentence unless their cumulative effect is such as to deprive the defendant of a fair trial and fair sentencing proceeding." Spears v. State, 1995 OK CR 36, ¶ 60, 900 P.2d 431, 445.   This Court looks at the entire record to determine whether the cumulative effect of improper conduct by the prosecutor prejudiced an appellant causing plain error. Romano v. State, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 115.   Having reviewed the entire record, we find neither reversal nor modification is warranted on this proposition.

Jones, 128 P.3d at 544-45.

The deferential standard of review under 28 U.S.C. § 2254(d) is required since the OCCA adjudicated Petitioner's prosecutorial misconduct claim on the merits. See Walker v. Gibson, 228 F.3d 1217, 1241 (10th Cir. 2000), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001).   Petitioner does not allege that the prosecutor's misconduct denied him a specific constitutional right.   The appropriate standard, therefore, is "'the narrow one of due process, and not the broad exercise of supervisory power.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v.

DeChristoforo, 416 U.S. 637, 642 (1974)).  Accordingly, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citation omitted).  A prosecutor's improper remarks require reversal of a conviction or sentence only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.  The fundamental fairness inquiry requires an examination of the entire proceedings and the strength of the evidence against Petitioner, both as to the guilt stage and the sentencing phase. Id. at 643 (see also Littlejohn v. Trammell, 704 F.3d 817, 837 (10th Cir. 2013)).

In almost every instance identified by Petitioner of statements that are claimed to be improper, the prosecutor prefaced her argument with words such as "submit" and "contend." During the first stage of trial, the prosecutor stated: "For instance, the State of Oklahoma contends that we know Julius Jones is the shooter in this case.  How do we know that?" (Tr., Vol. X, p. 48) The statement was met with an objection and the trial court ordered the prosecutor to rephrase the statement.  It then admonished the jury: "Ladies and Gentlemen of the jury, I'll remind you that anything that the attorneys say is for purposes of persuasion only.  You are the trier of fact.  And you will determine what the facts are in this case." Id. A later statement of the prosecutor's summation of her opinion of one of defendant's contentions regarding a disputed fact was met with an objection that her statement was improper.  The prosecutor offered to and did rephrase the statement, to which no subsequent objection was raised. (Tr., Vol. X, pp. 61-62)

Petitioner next complains the prosecutor inaccurately quoted the testimony of his

girlfriend, Analiese Presley.  These statements identified by Petitioner were the prosecutor's summation of the testimony and were also not met with an objection. (Tr., Vol. X, pp. 81, 91)  As Petitioner identifies in his Petition, "some correction of the attribution to the girlfriend was attempted (Pet. at 28): "But as the Judge told you, what we say is not evidence. So I'm going to tell you a few things that I remember that the State of Oklahoma apparently remembers different from the testimony.  But what I say about it, what they say about it doesn't matter.  It's what you remember being said." (Tr., Vol. X, p. 106)

Petitioner also claims the prosecutor speculated as to what the victim, Paul Howell, would have done had he been asked, and that the statement that he would have acquiesced in the taking of his vehicle was made as an encouragement to the jury to base its decision in part on sympathy.  The prosecutor's statement that Paul Howell was not given a chance to give up the vehicle,  that he would have done so voluntarily, and that he did not have to die for it, was made during the explanation of the elements of felony murder to argue a taking by force.  This statement was also not met with any objection. (Tr., Vol. X, pp. 63-64) The same is true regarding a similar statement made by the prosecutor during the second stage closing argument. (Tr., Vol. XV, p. 47)

Petitioner last claims the prosecutor encouraged the jury to disregard mitigating evidence and offered her opinion that the aggravating circumstances outweighed mitigation when the prosecutor submitted: (1) that the defendant's age did not reduce his level of blame (Tr., Vol. XV, p. 188); (2) that whether or not the killing was premeditated did not reduce the moral culpability of the murder (Tr., Vol. XV, p. 188); (3) that the defendant's

24

background of high school, Sunday school, and work experience did not extenuate the manner and reason for which Paul Howell was killed (Tr., Vol. XV, p. 189); and, (4) that the aggravating circumstances far outweighed any mitigation offered by the defense. (Tr., Vol. XV, p. 188)

As determined by the OCCA, these statements were all typical of normal closing argument and were reasonable inferences based on the evidence presented at trial. Additionally, the jury was reminded that the comments of counsel were not evidence and that the jury was to rely on its own recollection as to the testimony and evidence presented at trial. Petitioner has not demonstrated that the OCCA's determination of these claims is unreasonable.

As to the prosecutor's demonstration of the shooting utilizing a juror, Petitioner has offered nothing to demonstrate the OCCA's determination on that issue is unreasonable. Taken together with all of the instances of alleged improper statements and compared to the evidence presented at trial, Petitioner has not shown the cumulative effect of these comments and of the demonstration so infected his trial with unfairness as to deprive him of a fair trial. Accordingly, Petitioner's third ground for relief is denied.

Ground 4:      Removal of Prospective Juror for Cause.

In his fourth ground for relief, Petitioner argues the trial court improperly excused prospective juror McPeak for cause in violation of Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  Respondent asserts the OCCA's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

The Sixth and Fourteenth Amendments prohibit the exclusion of jurors from a capital trial "simply because they voice[] general objections to the death penalty or express[] conscientious or religious scruples against its infliction." Witherspoon v. Illinois, 391 U.S. 510, 522 (1968).  A dismissal of a juror contrary to Witherspoon is a constitutional error requiring vacation of a death sentence.  Rivera v. Illinois, 556 U.S. 148, 161 (2009).  A juror may be dismissed for cause if his "'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 420 (1985) (citation and emphasis omitted).  A trial court's determination of a juror's ability to obey instructions and fulfill his duties is subject to deference:  "[W]hen there is ambiguity in the prospective juror's statements, 'the trial court, aided as it undoubtedly is by its assessment of the venireman's demeanor, is entitled to resolve it in favor of the State.'" Uttecht v. Brown, 551 U.S. 1, 7 (2007) (alterations omitted) (quoting Wainwright, 469 U.S. at 434).  In addition, a trial judge's decision on juror bias is a factual determination subject to the presumption of correctness in 28 U.S.C. § 2254(e)(1).  Witt, 469 U.S. at 429; see also Cannon v. Gibson, 259 F.3d 1253, 1280 (10th Cir. 2001).

The OCCA considered Petitioner's claim on direct appeal and denied relief, concluding that while the juror's initial responses were ambiguous, upon further questioning by the trial court, the juror "clearly stated he could not and would not vote for the death penalty under any circumstances." Jones, 128 P.3d at 534.  A review of the record demonstrates that the OCCA's decision is not contrary to, nor an unreasonable application

of, clearly established federal law.  During voir dire, the following occurred between the trial

judge and prospective juror McPeak:

> THE COURT:  Alright.  And you have – have you heard me talk about these two groups of people, about these always and never groups?  Mr. McPeak, do you believe you fall into either one of those categories?

> PROSPECTIVE JUROR MCPEAK:  Yes, I do.

> THE COURT:  All right.  Which category is it that you believe that you fall into?

> PROSPECTIVE JUROR MCPEAK:  I believe I would fall into the one that I would never vote for the death penalty.

> THE COURT:  Okay.  Do you understand that Oklahoma law provides that you must listen to the evidence?

> PROSPECTIVE JUROR MCPEAK:  Yes, sir.

> THE COURT:  And that you must be able to follow the law in this case?

> PROSPECTIVE JUROR MCPEAK:  Yes, sir.

> THE COURT:  Are you telling me that you would not be able to listen to the evidence and you would not be able to follow the law?

> PROSPECTIVE JUROR MCPEAK:  I would be able to.

> THE COURT:  Pardon me?

> PROSPECTIVE JUROR MCPEAK:  I would be able to.

> THE COURT:  You would be able to follow the law?

> PROSPECTIVE JUROR MCPEAK:  Yes.

> THE COURT:  And if the law told you that you have to consider and give consideration to all three possible punishments, including the death penalty, that you would be able to consider all three possible punishments?

27

PROSPECTIVE JUROR MCPEAK:  Yes, sir, I would.  I would consider the other two before I considered the death penalty.

THE COURT:  Can you give meaningful consideration to all three punishments?

PROSPECTIVE JUROR MCPEAK:  Yes, sir.

THE COURT:  I thought that you told me, Mr. McPeak, that you would never – that you fell into this never category, that under any circumstances after the evidence has been presented, that you would not ever vote for the death penalty.

PROSPECTIVE JUROR MCPEAK:  Well, I wouldn't vote for the death penalty, but I would vote for the other two before I voted for the death penalty, if it came to that.

THE COURT:  Okay.  Mr. McPeak, you are kind of confusing me here a little bit.

PROSPECTIVE JUROR MCPEAK:  Well, I don't – I guess what I mean is that I would not vote for the death penalty, no.

THE COURT:  After listening to the evidence?

PROSPECTIVE JUROR MCPEAK:  Yes.

THE COURT:  And if the law told you that you had to give meaningful consideration to all three possible punishments, give meaningful consideration to all three, what you're telling me that is that you would under no circumstances vote for the death penalty?

PROSPECTIVE JUROR MCPEAK:  Yes.

THE COURT:  All right.  Counsel, do you want to approach?  Let me ask you this question, are you unequivocal in your answer?

PROSPECTIVE JUROR MCPEAK:  What do you mean by that?

THE COURT:  In other words, are you firm in your answer[?]

28

PROSPECTIVE JUROR MCPEAK:  Yes, sir.

(Tr., Vol. 2(A), pp. 156-59).

As the record makes clear, the juror unequivocally and firmly stated he could not vote to impose the death penalty.  The trial court was well within its province when it excused the juror for cause, as his views on serving on a capital jury would prevent or substantially impair the performance of his duties as a juror.  See Witt, 469 U.S. at 420.  Given the substantial deference given to a trial court's excusal of prospective jurors and this Court's standard of review under the AEDPA of the OCCA's determination, Petitioner's claim fails. See 28 U.S.C. § 2254(d); Brown, 551 U.S. at 7.

Petitioner also argues that the trial court did not give Petitioner an opportunity to question the juror regarding his responses.  However, Petitioner does not provide clearly established federal law in support of this claim.  See Brown v. Sirmons, 515 F.3d 1072, 1081 (10th Cir. 2008) (rejecting argument on habeas review that trial court was required to permit petitioner an opportunity to rehabilitate potential jurors).  Accordingly, Petitioner's fourth ground for relief is denied in its entirety.

Ground 5:     Absence From Various Stages of Proceedings.

Petitioner claims his Constitutional rights to be present at all critical stages of his trial were violated in several instances without an express personal waiver and against his wishes. Specifically, he asserts he was not present at the following: (1) a hearing regarding which laboratory the State should use to do destructive DNA testing; (2) a hearing regarding a witness' testimony as to whether he testified truthfully on the subject of expected leniency

on a pending charge and whether another witness disclosed all of his pending charges; (3) a hearing regarding possible suspicious telephone calls received by some of the jurors; (4) a hearing regarding jury instructions; (5) an admonition by the trial court to the jurors not to discuss the case during a break in deliberations to allow the jurors to move their cars out of the parking garage; and, (6) a hearing regarding a possible comment made by one of the jurors indicating that he may have already made up his mind about sentencing before hearing all of the evidence. (Pet. at 32; Motion Hearing 3/8/01, pp. 3-8; Tr., Vol. V, pp. 127-34; Tr., Vol. VI, pp. 33, 88; Tr., Vol. VII, pp. 5-137; Tr., Vol. X, pp. 3-49, 184-85; Tr., Vol. XIII, pp. 27-91).[14]  Respondent responds that the OCCA's determination was not unreasonable in light of clearly established Supreme Court precedent.

Petitioner raised this claim on direct appeal.  The OCCA held:

> Jones argues, in Proposition Ten, that he is entitled to a new trial because he was deprived of the right to be present at all critical stages of his trial in violation of due process and Oklahoma statute.  Jones claims he did not knowingly and voluntarily waive his right to be present at various hearings conducted during the course of his trial.  Jones states his trial counsel unilaterally waived his right to be present during certain court proceedings and on numerous other occasions the record is silent as to Jones's presence or waiver by trial counsel.  Jones claims his absence on these occasions prevented him from consulting with counsel which constitutes a due process violation and a structural flaw in the proceedings against him.

> A defendant's right to be present "at the trial" is protected by statute. 22 O.S.2001, § 583; Dodd v. State, 2004 OK CR 31, ¶ 20, 100 P.3d 1017, 1027; Ryder v. State, 2004 OK CR 2, ¶ 29, 83 P.3d 856, 864; Perry v. State,

---

[14]  Petitioner characterizes these instances as various court proceedings "including motion hearings, discussions of various legal issues, discussions of mistrial requests, taking up issues of possible jury contamination, and conferencing regarding instructions." (Pet. at 32.)

1995 OK CR 20, ¶ 25, 893 P.2d 521, 527–28.  The "right to be present" that Jones claims was violated is rooted primarily in a defendant's Sixth Amendment right to confront the witnesses against him.  Dodd, id.  A defendant's Fifth Amendment due process right is violated only if the defendant's absence from some portion of the proceedings is shown to have impaired his ability to defend himself.  Id.; see United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985); Snyder v. Massachusetts, 291 U.S. 97, 105–106, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934).  This "right to be present" has limitations, however.  Dodd, id.

> An accused does not have an absolute constitutional right to be present at every in camera discussion between court and counsel, even during the trial itself.  Davis v. State, 1988 OK CR 153, ¶ 12, 759 P.2d 1033, 1036.  Nor does the statutory right to be present "at the trial" extend to in camera hearings or other matters outside the jury's presence.  Reid v. State, 1970 OK CR 149, 478 P.2d 988, 999–1000, modified 507 P.2d 915.

Dodd, 2004 OK CR 31, ¶ 20, 100 P.3d at 1027–1028.

The record shows Jones was present for all critical stages.  Jones was present at all times the jury was in the courtroom, except for one occasion when the jury was brought into the courtroom for the sole purpose being dismissed for the day.  A knowing and voluntary waiver of his presence was not necessary for the pretrial hearings, motion hearings or the in camera hearings.  Dodd, id.  Trial counsel for Jones was always present at these hearings.

A defendant must be allowed to be present where his presence "bears, or may be fairly assumed to bear, a relation, reasonably substantial, to his opportunity to defend."  Lockett v. State, 2002 OK CR 30, ¶ 9, 53 P.3d 418, 423, quoting Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).  In Lockett, this Court said "it did not intend to hold in any way that 'the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow.' " Id. ( quoting Snyder, 291 U.S. at 106–107, 54 S.Ct at 332).  Appellant here has not specifically shown how his presence was necessary at these various hearings or how he was deprived of his opportunity to defend his case by his absence.  We find no statutory violation, no due process violation and no error.

Jones, 128 P.3d at 543-44.

A defendant has a constitutional right to be present at trial proceedings whenever his presence has a reasonably substantial relation to the fullness of his opportunity to defend against the charge. Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (defendant's rights under the Confrontation Clause of the Sixth Amendment were not violated by his exclusion from a hearing to determine the competency of two child witnesses); United States v. Gagnon, 470 U.S. 522, 526 (1985) (due process rights not violated by defendant's absence during in camera discussion between trial judge and juror). A defendant's presence at proceedings "is a 'condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" Gagnon, 470 U.S. at 526 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934)).

Petitioner's trial counsel was present at all of the hearings and conferences. A defendant's presence, however, is not required at a conference or hearing at which he could do nothing, such as a hearing on a motion that concerns only matters of law. Id. at 527. In the instant case, the discussions and arguments at the hearings involved either purely legal issues or factual determinations of matters outside the scope of those involving the charges against him that resulted in legal decisions by the trial judge. In each of these instances, Petitioner would have gained nothing by attending and could have contributed nothing related to the subject matter of the hearings or conferences.

Petitioner has not demonstrated his presence at these specific hearings had a reasonably substantial relation to the fullness of his opportunity to defend against the charge. His presence during these instances was not required for a fair hearing and he was not denied

due process. See Gagnon, 470 U.S. at 527.  Nor has Petitioner demonstrated that the OCCA's

determination is contrary to, or an unreasonable application of, clearly established federal

law as determined by the Supreme Court.  For the foregoing reasons, Petitioner's fifth ground

for relief is denied in its entirety.

Ground 6:       Ineffective Assistance of Appellate Counsel.

       In his sixth ground for relief, Petitioner claims his appellate counsel was ineffective

because he failed to discover a juror had "an extensive record of contacts" with the legal

system, failed to discover that another person from the county jail could corroborate that

Christopher Jordan confessed to the murder, and failed to argue the unconstitutionality of

Oklahoma's determination of whether mitigating circumstances outweigh aggravating

circumstances.

       As discussed above, when considering Petitioner's claims of ineffective assistance of

trial counsel, Strickland, requires Petitioner to establish both that his counsel's performance

was deficient and that his defense was thereby prejudiced.  Strickland's requirements for

demonstrating ineffective assistance of counsel govern the ineffective assistance of appellate

counsel inquiry. Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing Smith v.

Robbins, 528 U.S. 259, 285 (2000)).  Demonstrating deficient performance of appellate

counsel for failing to raise an issue can, however, be difficult.

       A claim of appellate ineffectiveness can be based on counsel's failure
       to raise a particular issue on appeal, although it is difficult to show deficient
       performance under those circumstances because counsel "need not (and should
       not) raise every nonfrivolous claim, but rather may select from among them in
       order to maximize the likelihood of success on appeal." Id. at 288, 120 S.Ct.

746 (following <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Thus, in analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, "we look to the merits of the omitted issue," <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 (10th Cir.2001) (quotation omitted), <u>cert. denied</u>, 537 U.S. 835, 123 S.Ct. 145, 154 L.Ed.2d 54 (2002), generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance. <u>See</u>, <u>e.g.</u>, <u>Smith</u>, 528 U.S. at 288, 120 S.Ct. 746; <u>Banks v. Reynolds</u>, 54 F.3d 1508, 1515-16 (10th Cir. 1995); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

<u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202-03 (10th Cir. 2003) (footnote omitted).

### 1. Failure to Investigate Juror's Background

Petitioner first claims both trial counsel and appellate counsel "together failed to discover that juror Whitmire, despite creating the impression that he had had only minor contact with the legal system prior to be [sic] called to jury [sic], in fact had an extensive record of contacts including multiple offenses of driving under the influence of alcohol." (Pet. at 33.)[15] This claim was raised by Petitioner in his application for post-conviction review and was denied on the merits by the OCCA:

> Petitioner also faults direct appeal counsel for failing to thoroughly investigate the juror's backgrounds. He claims that one juror, Juror W., gave false or misleading answers in *voir dire*, chiefly about his prior dealings with the judicial system. During *voir dire*, the trial court asked if any of the panel had appeared in a court of law under any circumstances as a witness, plaintiff,

---

[15] This is the entire extent of Petitioner's argument on this issue.

or defendant.  Juror W.'s answer was "[t]raffic-related offenses."  Petitioner claims this answer was "misleading at best" because, according to documents appended to Petitioner's Application, Juror W. (1) had been a defendant in a 1986 Oklahoma County civil lawsuit; (2) had sought bankruptcy protection in 1989; (3) had been the subject of two emergency protective orders in 1999; and (4) had been convicted several times of Driving Under the Influence, including two felony convictions for that crime in 1984.  Petitioner also presents evidence suggesting that Juror W. embellished or misrepresented the nature of his employment, claiming that he was a physical therapist, when in fact he was a physical therapist's assistant.

Regarding his apparent felony driving convictions, Juror W.'s answer was literally true; as Petitioner concedes, Driving Under the Influence is defined and punished in the Oklahoma Highway Safety Code, 47 O.S. § 11-902.  Regarding his other contacts with the judicial system, the State points to the lack of evidence that Juror W. actually had to appear in court on any of them.  Whether Juror W.'s answer was deliberately intended to be misleading or untruthful is debatable.[3]  Nevertheless, Petitioner has failed to show that Juror W. could not be a fair and impartial juror in this case.

> [3]The documents Petitioner submits indicate that Juror W. did not appear in the civil action and that a default judgment was entered against him.  It is not clear whether Juror W. was ever required to appear in court on the bankruptcy matter.  As to the protective orders, emergency orders are issued *ex parte* without the subject party being required to appear.  22 O.S. 2001, § 60.3.  However, in his reply brief, Petitioner includes an appearance docket for one of the protective-order cases, which suggests Juror W. did appear in court on the day the temporary order against him was rescinded.

Certain classes of persons - including, among others, practicing attorneys, law enforcement officers, and felons who have not had their civil rights fully restored - may be excused from jury service "for cause." 38 O.S. 2001, § 28; 22 O.S. 2001, § 658.  Like most jurisdictions, including the United States Supreme Court, Oklahoma has long held that statutory qualifications for jury service are not fundamental or constitutional in nature.  Rather, the overarching concern is whether the juror in question could be fair and impartial. See Kohl v. Lehlback, 160 U.S. 293, 301-03, 16 S.Ct. 304, 307, 40 L.Ed. 432 (1895); Queenan v. Territory, 11 Okl. 261, 71 P. 218, 219-220 (1901), aff'd, 190 U.S. 548, 23 S.Ct. 762, 47 L.Ed. 1175 (1903).  "[T]he

general rule is to the effect that statutes providing for the selection of electors for jury service have never been regarded as an essential element of the right of trial by jury, and the method of selection is entirely within the control of the Legislature, provided only that the fundamental requisite of impartiality is not violated." Brown v. State, 14 Okl. Cr. 609, 618, 174 P. 1102 (1918).

As we stated in Petitioner's direct appeal (regarding a different challenge to the jury-selection process), it is ultimately trial counsel's responsibility to use *voir dire* to determine whether those selected for the jury are acceptable to him. Jones, 2006 OK CCR 5 at ¶ 9, 128 P.3d at 533. Challenges to a juror's qualifications must be raised at the first available opportunity, or they are waived. Johnson v. State, 1988 OK CR 242, ¶ 17, 764 P.2d 197, 201; Cooper v. State, 27 Okl.Cr. 278, 282, 226 P. 1066, 1067-68 (1924). Absent evidence that the juror was biased, a trial court's decision to grant a new trial is generally reviewed for an abuse of discretion. Johnson, 1988 OK CR 242 at ¶ 19, 764 P.2d at 202. This rule applies even when the juror's answers to *voir dire* questions appear to have been deliberately misleading. Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 73, 47 L.Ed. 119 (1902); McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)("The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial"); United States v. Currie, 609 F.2d 1193, 1194 (6th Cir. 1979).

Petitioner presents no affidavits as to whether, and if so, when, either trial or appellate counsel ever became aware of Juror W.'s contacts with the judicial system. In essence, he asks this Court to presume deficient performance from a silent record. Strickland requires us to presume that counsel acted competently, exploring all reasonable avenues of inquiry. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jones, 2006 OK CR 5 at ¶ 78, 128 P.3d at 545. The fact that a juror may be excusable "for cause" does not necessarily mean that either party wishes to have him removed. Indeed, defense counsel may have sound strategic reasons for keeping a panelist with a criminal record. See Jackson v. State, 1998 OK CR 39, ¶¶ 14-18, 964 P.2d 875, 884 (on appeal, defendant claimed the trial court erred in excusing a prospective juror for cause, even though he was a convicted felon). However, we do not reach the issue of reasonable strategy, because we simply cannot tell, from the record before us, whether or not Petitioner's prior counsel were aware of Juror W.'s past legal affairs. We will not find counsel to have performed deficiently on such unsupported allegations. Rule 9.7(B)(2), (D), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S., Ch. 18, App.

(2007); <u>Jones</u>, 2006 OK CR 5 at ¶ 85, 128 P.3d at 547; <u>see also</u> <u>Conover v.</u> <u>State</u>, 1997 OK CR 39, ¶ 14, 942 P.2d 229, 233 (failure to raise juror's felony record on direct appeal did not, standing alone, establish ineffective assistance of appellate counsel). Moreover, Petitioner has failed to show that Juror W. was unable to be fair and impartial – the prejudice prong of the <u>Strickland</u> analysis. <u>Harris</u>, 2007 OK CR 32 at ¶ 15.

<u>Jones</u>, PCD-2002-630, slip op. at 5-9 (other footnotes omitted).

In <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548 (1984), the Supreme Court held that in order to obtain a new trial based on a juror's mistaken response to a question in voir dire, the juror's impartiality is paramount to the consideration of a fair trial:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

<u>Id.</u> at 556.

Here, Petitioner not only has failed to demonstrate that juror Whitmire's answers were not honest or that the questions presented to him were material, he has also failed to show that the juror was impartial. Petitioner does not explain how previous appearances in a court of law would affect this juror's ability to be unbiased and to follow the law as given by the trial court. Most importantly for this Court's review, Petitioner has not demonstrated that the OCCA's determination is contrary to, or an unreasonable application of, clearly established Federal law.

2.  Failure to Discover Corroborating Witness

Petitioner next summarily claims that trial counsel and appellate counsel "failed to discover that Emmanuel Littlejohn's report of a Christopher Jordan confession could be corroborated by at least one other person - Christopher Berry." (Pet. at 33.)  This claim was also raised in Petitioner's application for post-conviction relief and denied by the OCCA:

> Next, Petitioner claims trial counsel was ineffective for failing to investigate and present two witnesses at trial, and that appellate counsel was ineffective for not recognizing and advancing this claim on direct appeal. Specifically, Petitioner claims the testimony of Christopher Berry and James Lawson could have made a difference in the outcome of the trial.  At the time of Petitioner's trial, Berry was being held in the Oklahoma County Jail on a charge of Child Abuse Murder.  He was later convicted of that charge and sentenced to life in prison without possibility of parole.  Berry claims, by affidavit, that he overheard Petitioner's co-defendant, Christopher Jordan, boasting that he, not Petitioner, was the triggerman in the homicide with which they were jointly charged.

> Petitioner made a similar claim on direct appeal, alleging trial counsel was ineffective for not presenting the testimony of another jail inmate, Emmanuel Littlejohn, who also allegedly heard Jordan boast about being the triggerman.  We rejected that claim, because the inmate's credibility was suspect and the details of the account were specious. Jones, 2006 OK CR 5 at ¶ 82, 129 P.3d at 546.  Berry suffers from the same credibility problems that Littlejohn did.  Nor do we agree with Petitioner's argument that Berry's claim necessarily "corroborates" Littlejohn's.  Berry's affidavit suggests that Jordan admitted Petitioner was involved in the murder, while according to Littlejohn, Jordan denied that Petitioner had any involvement. See id.  Taken together, these inmates' claims show only one thing: that Christopher Jordan changed his story to suit his own needs.  Yet this much was already clear to the jury, through trial counsel's extensive cross-examination of Jordan, who testified against Petitioner at trial. See id. at ¶ 83, 128 P.2d [sic]at 546-47.

> The posture of this case requires Petitioner to demonstrate not only that trial counsel failed to conduct a reasonably thorough investigation into witnesses potentially favorable to the defense, but that appellate counsel did as well.  Petitioner claims appellate counsel "failed to investigate whether

others heard Mr. Jordan's confessions in the jail," but he does not present specifics to show how a reasonable investigation would have uncovered Berry's current claim. Berry does not aver that he ever attempted to contact Petitioner's appellate counsel, and Petitioner does not explain how appellate counsel was supposed to find out about Berry's claims in any other way. If Berry had information he believed to be relevant to Petitioner's case, then he had a responsibility to reveal it timely. We will not find appellate counsel deficient for failing to be clairvoyant. Petitioner has failed to show either (1) that appellate counsel's investigation was not reasonable, or (2) that such investigation would have uncovered information that undermines confidence in the outcome of the trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Jones, PCD-2002-630, slip op. at 10-11.

As identified by the OCCA, trial counsel extensively cross-examined Christopher Jordan at trial and identified for the jury's consideration numerous changes in his account of the events related to the shooting. Petitioner has not demonstrated either deficient performance of trial counsel or resulting prejudice, nor that appellate counsel was ineffective for failing to raise the issue on appeal. He adds nothing more on habeas review to demonstrate the OCCA's determination was unreasonable.

### 3. Failure to Argue Unconstitutionality of Aggravating/Mitigating Weighing Scheme

Lastly, Petitioner claims appellate counsel "also failed to argue the unconstitutionality of Oklahoma's determination of whether mitigating circumstances outweigh aggravators," and that this failure constitutes ineffectiveness because the current scheme violates Apprendi v. New Jersey, 530 U.S. 466 (2000), "in that only the first fact in the chain of aggravator-mitigator factfinding is required to be found beyond a reasonable doubt under Oklahoma's current scheme." (Pet. at 33-34.) The OCCA summarily denied Petitioner's claim based on

its repeated rejections of previously raised claims of the same nature:

> Petitioner argues that several aspects of Oklahoma's capital trial procedure constitute structural defects in the judicial process: . . . (4) not requiring the jury to find that aggravating circumstances outweigh mitigating circumstances "beyond a reasonable doubt." Constitutional challenges to all of theses claims have been repeatedly considered and rejected by this Court. Harris, 2007 OK CR 32 at ¶ 19; Hogan v. State, 2006 OK CR 19, ¶ 84, 139 P.3d 907, 935; Rojem v. State, 2006 OKCR 7, ¶¶ 59-60, 66-67, 130 P.3d 287, 299, 300; Matthews v. State, 2002 OK CR 16, ¶ 56, 45 P.3d 907, 924. Attempting to label them as "structural error" adds nothing new to the analysis.

Jones, PCD-2002-630, slip op. at 13-14.

Petitioner's jury was instructed that it must find the existence of any aggravating circumstance beyond a reasonable doubt. The jury made the determination that Petitioner had knowingly created a great risk of death to more than one person and that there existed the probability that he would commit criminal acts of violence that would constitute a continuing threat to society. The jury's determination of the existence of those aggravating circumstances – the functional equivalent of an element of a greater offense – placed Petitioner in that class of persons eligible to receive the death penalty. All Apprendi requires is that a jury, and not a judge, determine the existence of aggravating circumstances beyond a reasonable doubt.

In Matthews v. Workman, 577 F.3d 1175 (10th Cir. 2009), the Tenth Circuit considered a claim identical to the one presented here and found it barred by its decision in United States v. Barrett, 496 F.3d 1079, 1107 (10th Cir. 2007):

> There, we explained that the jury's determination that aggravating factors outweigh mitigating factors is not a finding of fact subject to Apprendi but a "highly subjective, largely moral judgment regarding the punishment that a

particular person deserves." Id. at 1107 (citing Caldwell v. Mississippi, 472 U.S. 320, 340 n. 7, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)).  We are of course bound by this decision as the law of the circuit.

Matthews, 577 F.3d at 1195.

Petitioner has failed to demonstrate that his Sixth, Eighth, and Fourteenth Amendment rights were violated by either Oklahoma's sentencing procedure and requirements or the jury's determination of the prerequisites necessary for the imposition of a sentence of death. The underlying claim supporting Petitioner's assertion of ineffectiveness is without merit. As such, neither trial nor appellate counsel can be found to have performed deficiently for failing to raise and argue this claim, nor has Petitioner demonstrated the OCCA's determination to be unreasonable.  Accordingly, Petitioner's sixth ground for relief is denied.

Ground 7:      Life Without Possibility of Parole Jury Instructions.

Petitioner claims the trial court erred when it failed to give an instruction regarding the meaning or effect of the sentence of life without the possibility of parole, in violation of his Eighth and Fourteenth Amendment rights.  He contends that because of the trial court's omission of this instruction on an "issue that regularly confuses jurors," he is entitled to habeas relief. (Pet. at 35.)

On appeal, Petitioner raised a number of issues he conceded the OCCA had previously rejected.  The instant claim is one of those issues.  The OCCA declined to revisit the issues and found that prior adjudications did not have an effect on the fairness of Petitioner's trial or on his sentencing. Jones, 128 P.3d at 551 & n.11.

The Supreme Court has previously addressed this issue, albeit with fewer sentencing

options than the three provided by Oklahoma law:

> In Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), this Court held that where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without the possibility of parole, due process entitles the defendant "to inform the jury of [his] parole ineligibility, either by jury instruction or in arguments by counsel."

Shafer v. South Carolina, 532 U.S. 36, 39 (2001) (quoting Ramdass v. Angelone, 530 U.S. 156, 165 (2000)).  In both Simmons and Shafer, the jury was only given two sentencing options, creating a false choice of either sentencing the petitioners to death or sentencing them to a limited period of incarceration. Simmons, 512 U.S. at 161; Shafer, 532 U.S. at 41.

In Mayes v. Gibson, 210 F.3d 1284 (10th Cir. 2000), the Tenth Circuit was presented with an issue identical to Petitioner's instant claim.  In Mayes, the trial court had instructed the jury to choose between life imprisonment, life imprisonment without the possibility of parole, and death.  The Tenth Circuit concluded the "three-way choice fulfills the Simmons requirement that a jury be notified if the defendant is parole ineligible," and denied relief. Id. at 1294; see also McCracken v. Gibson, 268 F.3d 970, 980-81 (10th Cir. 2001).

Subsequent to Mayes, the Tenth Circuit was presented with the argument that the Supreme Court's decision in Shafer undermined the Circuit's prior determination in Mayes. Smith v. Mullin, 379 F.3d 919 (10th Cir. 2004).  The Tenth Circuit held:

> Given the two-way choice in Shafer, and the clear evidence of jury confusion, that case is distinguishable from our decision in Mayes. Because Mr. Smith's case is identical to Mayes and suffers none of Shafer's identified short-comings, Mr. Smith is not entitled to relief from his sentence on these grounds.

Smith, 379 F.3d at 938.

In Welch v. Workman, 639 F.3d 980, (10th Cir. 2011), the Tenth Circuit considered an issue on habeas review regarding two notes from the jury requesting clarification of the meaning of the life without possibility of parole sentencing option.  The trial court responded both times that it was not allowed to answer the jury's question. In denying relief, the Tenth Circuit stated:

> Even assuming the trial court's statement (that it was not allowed to answer the jury's questions) ran afoul of Oklahoma procedural law, its response simply could not have created a prohibited false choice under the United States Constitution.  Failing to clarify the life without parole instruction cannot be "taken to mean that parole was available but that the jury, for some unstated reason, should be blind to this fact." Shafer, 532 U.S. at 53, 121 S.Ct. 1263 (quotation marks omitted).  Rather, as in McCracken and McGregor, the state trial court's non-responsive answer simply required the jury to return to the instructions as its sole guidance.  And those instructions properly referred to Oklahoma's three-option sentencing scheme, offering the jury three choices—death, life imprisonment without parole and life imprisonment—which we have previously held to be constitutionally adequate. Hamilton v. Mullin, 436 F.3d 1181, 1191 (10th Cir. 2006).

Id. at 1005; see also Littlejohn v. Trammell, 704 F.3d 817, 826-31 (10th Cir. 2013).

Petitioner's claim here fails in that there is no evidence of jury confusion on the issue of the sentencing options.  The Tenth Circuit has held that due process concerns arise under Simmons only when four factors are met:

> "(1) the prosecution seeks the death penalty; (2) the prosecution places the defendant's future dangerousness at issue; (3) the jury asks for clarification of the meaning of 'life imprisonment,' or a synonymous statutory term; and (4) the judge's response threatens to cause a jury's misunderstanding so the jury will perceive a false choice of incarceration when future dangerousness is at issue."

Hamilton v. Mullin, 436 F.3d 1181, 1191 (10th Cir. 2006)(quoting Mollett v. Mullin, 348 F.3d 902, 914 (10th Cir. 2003)).  Unlike Hamilton, Petitioner's jury did not send a note to the trial court during deliberations requesting clarification of the sentencing options.  Without a note or question from the jury, and without a judge's response to such jury inquiry, there is no evidence to suggest jury confusion or that the jury was misled. Id.

The Tenth Circuit's precedent precludes the instant claim.  Petitioner does not make any argument which compels or permits this court to disregard this binding precedent. See United States v. Foster, 104 F.3d 1228 (10th Cir. 1997).  Additionally, Petitioner has failed to demonstrate that the OCCA's resolution of this claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. §2254(d)(1).  Accordingly, this ground for relief is denied.

<u>Ground 8:</u>     Challenge to Continuing Threat Aggravating Circumstance.

In his eighth ground for relief, Petitioner contends that under the current Oklahoma interpretation, there is no homicide that could not be made death-eligible through the use of the continuing threat aggravating circumstance.  The Court interprets Petitioner's argument as a claim that the aggravating circumstance is unconstitutionally vague and overbroad. Respondent responds that the aggravating circumstance is constitutional, that the OCCA's determination regarding vagueness is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, and that Petitioner's

"overbroad" challenge is unexhausted and procedurally barred from review.[16] Alternatively, Respondent argues Petitioner's claim is foreclosed by binding Tenth Circuit precedent and must be denied.

Petitioner's constitutional challenge to the continuing threat aggravating circumstance was denied by the OCCA.  The State Court held: "This Court has repeatedly upheld the constitutional validity of the continuing threat aggravator and we will not revisit the issue." Jones, 128 P.3d at 549.

In Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997), the Tenth Circuit found Oklahoma's continuing threat aggravating circumstance was "nearly identical" to the aggravating factor used by Texas and approved by the Supreme Court in Jurek v. Texas, 428 U.S. 262, 274-75 (1976).  In construing the constitutionality of Oklahoma's continuing threat aggravating circumstance, the Tenth Circuit held:

> [t]he fact that Oklahoma chooses to grant a sentencing jury wide discretion to make a predictive judgment about a defendant's probable future conduct does not render the sentencing scheme in general, or the continuing threat factor in particular, unconstitutional.  Although this predictive judgment is not susceptible of "mathematical precision," we do not believe it is so vague as to create an unacceptable risk of randomness.  To the contrary, we believe the question of whether a defendant is likely to commit future acts of violence has a "common-sense core of meaning" that criminal juries are fully capable of understanding.

Nguyen, 131 F.3d at 1354.

_____

[16]  The Court need not consider Respondent's exhaustion and procedural bar assertion, as Petitioner's claim may be rejected easily on the merits.  28 U.S.C. § 2254(b)(2); Neill, 278 F.3d at 1063.

Both the Tenth Circuit and the United States Supreme Court have found this aggravating circumstance to pass constitutional muster. See Johnson v. Texas, 509 U.S. 350 (1993) (Texas' capital sentencing scheme based on continuing threat to society does not violate Eighth Amendment); Revilla v. Gibson, 283 F.3d 1203, 1218 (10th Cir. 2002); Sallahdin v. Gibson, 275 F.3d 1211, 1232 (10th Cir. 2002); Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000); Hooks v. Ward, 184 F.3d 1206, 1238-39 (10th Cir. 1999); Moore v. Gibson, 195 F.3d 1152, 1177-78 (10th Cir. 1999); Ross v. Ward, 165 F.3d 793, 800 (10th Cir. 1999); Trice v. Ward, 196 F.3d 1151, 1172-73 (10th Cir. 1999); Castro v. Ward, 138 F.3d 810, 816 (10th Cir. 1998).

> Mr. Wilson first challenges the constitutionality of the continuing threat aggravator. Under Oklahoma law, this aggravator requires "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Okla. Stat. Ann. tit. 21, § 701.12(7). He claims that this is vague and overbroad because it does not perform the appropriate narrowing function. This claim is foreclosed by our Circuit's precedent. We have repeatedly upheld the constitutionality of this aggravator. See, e.g., Sallahdin v. Gibson, 275 F.3d 1211, 1232 (10th Cir. 2002); Medlock, 200 F.3d at 1319–20; Nguyen v. Reynolds, 131 F.3d 1340, 1353–54 (10th Cir. 1997). Mr. Wilson offers no reasons for us to deviate from our prior precedent, and we decline to do so today.

Wilson v. Sirmons, 536 F.3d 1064, 1109 (10th Cir. 2008).

As in Wilson, the Tenth Circuit's precedent precludes this claim. And like his previous ground for relief, Petitioner does not make any argument which compels or permits this Court to disregard Tenth Circuit binding precedent. Petitioner has failed to demonstrate that the OCCA's resolution of this claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C.A. §2254(d)(1).  Therefore, habeas relief on Petitioner's eighth ground for relief is denied.

## **CONCLUSION**.

After a complete review of the transcripts, trial record, appellate record, record on post-conviction proceedings, briefs filed by Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his *Petition For Writ of Habeas Corpus* (Dkt. No. 22) should be denied.  ACCORDINGLY, habeas relief is DENIED on all grounds. An appropriate judgment will be entered.

IT IS SO ORDERED this 22nd day of May, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE